[No. S063097. July 6, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
NATALIE NADINE GUIUAN, Defendant and Appellant.

COUNSEL

Natalie Nadine Guiuan, in pro. per., and Corinne S. Shulman, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Mia Anna Mazza, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—In this matter, defendant was convicted of offenses including kidnapping and attempted first degree murder with the help of three accomplices. The accomplices testified at trial as witnesses for the prosecution, and the superior court, without objection by defendant, gave the standard instruction cautioning the jurors to view their testimony "with distrust." The Court of Appeal concluded that the superior court erred in failing sua sponte to tailor the instruction to state that it did not apply to any testimony "favorable" to defendant, but, holding the error harmless, affirmed the judgment of conviction.

We granted review to determine whether the superior court did so err. The answer is negative. The trial court properly instructed the jury, consistent with our holding in *People v. Williams* (1988) 45 Cal.3d 1268, 1314 [248 Cal.Rptr. 834, 756 P.2d 221]. In the absence of any objection, it was not required sua sponte to modify the instruction with regard to testimony that might be construed as favorable to the defendant. We conclude, however, that, to lessen the burden on the trial court, the instruction in *Williams* should

be modified in future cases specifically to indicate that only testimony unfavorable to the defendant should be viewed with care and caution; the instruction is applicable whenever an accomplice, or possible accomplice, testifies. On this basis, we affirm the judgment of the Court of Appeal.

## I.

On July 8, 1994, Natalie Nadine Guiuan and three teenagers, Josh S., Prince W., and Elisha F., kidnapped and attempted to kill Kimberly Marston. The parties do not dispute the underlying facts, which, as relevant here, tell the following tale.

Beginning in June 1994, Guiuan volunteered to work as a confidential informant for the San Mateo County Narcotics Task Force. Although she told the officer to whom she was assigned that she did not use drugs, she was evidently a regular user of cocaine and methamphetamine. Around the same time, she began having trouble with her 13-year-old daughter, Kimberly S., who had recently returned to live with her and her three younger daughters after many years of separation, but was now staying in a "fort" or clubhouse behind the home of a teenage friend.

On July 1, Guiuan told Marston that Kimberly S. was being held by "some gang." Although Guiuan was 33 years old and Marston was 24, Guiuan referred to her as "Baby." Marston, who considered Guiuan her "best friend," referred to her as "Mom." Marston introduced Guiuan to 15-year-old Jason M., whom she described as a junior cadet with the Daly City Police, suggesting that he might be able to talk to the gang members. Marston, also a regular drug user, asked Guiuan to obtain methamphetamine for her. Guiuan agreed; accompanied by Jason, she purchased drugs from a supplier she was planning to set up for a "major bust." The same day, Jason introduced Guiuan to Josh and Prince, both 14 years old.

On July 3, friends of Kimberly S. called Guiuan and told her she could "come and get" her daughter. After she brought Kimberly S. home, Guiuan asked Josh to watch her so she would not run away. Josh introduced Guiuan to his friend Elisha, aged 15, as someone who could help with Kimberly S.

On July 6, Marston moved temporarily to Guiuan's home. That evening, while driving in her car with Marston and Josh, Guiuan said that she thought gang members were following her. Later, at her home, she said she saw unknown snipers outside using night scopes to see inside. She was afraid that the snipers' presence was related to her working as an informant. Apparently to avoid suspicion, she accused Marston and Jason of being

"snitches" who had endangered her and her children. That night, she rented a motel room, where the group relocated. There, Prince and Josh harassed Marston, trying to get her to admit to being a "snitch."

On July 7, in the early morning, Marston attempted to leave the motel to go to work. Guiuan refused to allow her to do so; she attacked Marston with a knife and the others joined in with their hands and a flashlight. Later that day, they confined Marston in Prince's basement.

That night, according to Elisha, Guiuan came up with a plan to kill Marston. They would dress in black clothing, take Marston to Half Moon Bay in Guiuan's car, and kill her with knives supplied by Guiuan. Much of the planning was done in the presence of Kimberly S.

On July 8, in the early morning, Guiuan, Josh, Prince, and Elisha took Marston from Prince's basement and, after she was bound, gagged, and blindfolded, drove to a hilly, isolated spot near Half Moon Bay. They struggled with Marston and attempted to kill her with knives. After trying to slit Marston's throat, Guiuan returned to her car. There, she said that Marston had kicked her in the stomach and that she was in pain. Later, she stood outside the car with Prince, who pretended to be working on the engine. Elisha approached and Guiuan gave her a heavy tire iron with which to hit Marston. Guiuan and Prince then drove around for 45 minutes at Elisha's suggestion, "so that it wouldn't get obvious," while Elisha and Josh continued the attack. After Marston stopped moving, they left her for dead.

Guiuan and the teenagers returned to Guiuan's home. They cleaned the weapons used in the attack and collected the bloodied clothing in a plastic bag, which they later discarded in dumpsters.

That evening, Guiuan informed police that she had overheard a conversation indicating that "Baby" had been "butchered." She said she knew where the body was because she had gone to the area described in the conversation and found it. She led the police to Marston, who was not dead. She was suffering from superficial stab wounds all over her body, a superficial slash wound across her throat, and head lacerations.

At Guiuan's trial, the prosecution called Elisha, Josh, and Prince, among others, to testify concerning the offenses. They identified Guiuan as the leader and driving force behind the confinement of Marston, the plan to kill her, and its execution. They described Guiuan's heavy use of methamphetamine and several instances of bizarre behavior, including her belief that gang members were following her car and that unknown snipers were

outside her home. They also stated that she tried to convince them that Marston and Jason were "snitches," and that Marston was to blame for putting her and her children in danger.

Guiuan presented a defense that a mental disorder caused her to believe that Marston was a threat to her and her daughters. She offered evidence to the effect that she lacked intent to kill and acted under duress. She relied on expert testimony that she suffered from "borderline personality disorder," a condition that can make a person psychotic or dissociated under stress. She also testified that she feared people were out to get her because of her own work as a police informant.

The jury instructions included the standard instruction cautioning the jurors that the testimony of an accomplice should be viewed with distrust, in accordance with CALJIC No. 3.18 (5th ed. 1988) as follows: "The testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled after examining it with care and caution in the light of all the evidence in the case."[1] Guiuan did not object to the instruction.

Guiuan was convicted of offenses including kidnapping and attempted first degree murder. She was sentenced to a term of 25 years to life in state prison.

On appeal, Guiuan did not dispute that Josh, Prince, and Elisha, called to testify by the prosecution, were her accomplices. She claimed, however, that the superior court erred in failing sua sponte to modify the standard instruction to view accomplice testimony with distrust to apply only to "those portions which tended to incriminate the defendant." She cited passages from her accomplices' testimony that she claimed would have supported her defenses that she suffered from a mental disorder, lacked intent to kill, and acted under duress. For example, she pointed to Elisha's testimony to the effect that, although she said that she wanted "to get rid of . . . Marston," she did not actually say "I want her killed" or "I want her dead." Similarly, Josh testified that she never said that she wanted Marston stabbed, knifed, or hurt, but only that she wanted her "out of here" or "in a safe place" or "taken care of." She also pointed to testimony by the accomplices corroborating her claims that she believed she saw persons outside her home, that her car was being followed when she took her children to the motel, and that Marston was putting her family at risk because she was a "snitch." In addition, she cited testimony by Prince that, during the drive to Half Moon Bay, she said

---

[1]Accord, CALJIC No. 3.18 (6th ed. 1996).

she felt sick and could not go through with it. She also pointed to his testimony that he drove around with her for 45 minutes while Elisha and Josh attacked Marston.[2]

The Court of Appeal concluded that the superior court had a duty sua sponte to tailor the instruction regarding accomplice testimony to relate only to statements favorable to the prosecution. It acknowledged that *People* v. *Williams, supra,* 45 Cal.3d 1268, requires that when an accomplice is called by the prosecution, the court must give the instruction in question. It determined, however, that the relevant consideration under *Williams* is not which party "called" the accomplice to the stand, but whether the accomplice's testimony is "favorable" or "unfavorable" to the defendant. While observing that such a rule "can lead to mischief," it stated that it was "duty-bound to follow *Williams.*" It noted that it "would welcome review" if it had misconstrued *Williams* on this point. Be that as it may, it found the testimony harmless, determining that it was of only marginal relevance and was largely cumulative. We granted review.

## II.

In *Williams,* we addressed the trial court's duty to instruct the jurors regarding accomplice testimony: "The law on this question is clear. When an accomplice is called as a witness by the prosecution, the court must instruct the jurors sua sponte to distrust his testimony. [Citations.] When, by contrast, he is called by the defendant, the instruction should be given only at the defendant's request. [Citations.] Finally, when he is called by both parties, the instruction should be tailored to relate only to his testimony on behalf of the prosecution." (*People* v. *Williams, supra,* 45 Cal.3d at p. 1314.)

In *Williams,* the defendant's accomplice was a crucial witness for the prosecution; when called to testify on behalf of the defendant, however, he also gave testimony favorable to him. (*People* v. *Williams, supra,* 45 Cal.3d at pp. 1313-1314.) The trial court gave the standard instruction that accomplice testimony should be viewed with distrust. We held that it erred in failing sua sponte "to instruct the jurors that they should regard with distrust only [the accomplice's] testimony on behalf of the prosecution." (*Id.* at p. 1314.)

---

[2]The same witnesses gave "unfavorable" testimony on many of the same points. Thus, Elisha testified that it was Guiuan's plan either to "push the knife in back through [Marston's] neck or slit her throat." Josh testified that Guiuan "implied" that there was a plan to kill Marston, although he "just thought it was idle conversation." Prince testified that Guiuan, Elisha, and Josh all got out of the car "talking about they are sick and can't go through with it." Prince also testified that, before they drove around, he saw Guiuan "grab the knife and try to slit [Marston's] throat."

As *Williams* indicates, the rules concerning jury instructions for accomplice testimony are well established. They address three situations, which we examine in turn.

First, *Williams* reiterates the long-standing requirement that when an accomplice is called to testify on behalf of the prosecution, the court must instruct the jurors that accomplice testimony should be viewed with distrust. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1314.)

The instruction originates in the common law. As explained in *People* v. *Coffey* (1911) 161 Cal. 433, 438 [119 P. 901]: "[I]t was, of course, recognized that evidence of an accomplice, coming from a tainted source, the witness being . . . a man usually testifying in the hope of favor or the expectation of immunity, was not entitled to the same consideration as the evidence of a clean man, free from infamy. Hence, it soon became the practice of the common law judges, in the wide latitude allowed to them in the instruction of their juries, to advise the latter that the testimony of an accomplice . . . was to be viewed with care, caution, and suspicion . . . ."

In 1872, drawing from the common law, the Legislature enacted former section 2061, subdivision 4 of the Code of Civil Procedure (hereafter former section 2061, subdivision 4), which codified the admonition concerning accomplice testimony as a rule of positive law. It required, in relevant part: "The jury . . . are . . . to be instructed by the court on all proper occasions . . . [t]hat the testimony of an accomplice ought to be viewed with distrust . . . ."

We subsequently questioned whether instruction in conformity with former section 2061, subdivision 4, was necessary or even constitutional under former article VI, section 19 of the 1879 California Constitution, which provided that "[j]udges shall not charge juries with respect to matters of fact." (See *People* v. *Ruiz* (1904) 144 Cal. 251, 253 [77 P. 907] [the trial court did not err in refusing to instruct based on former section 2061 subdivision 4, after an accomplice testified against the defendant]; *People* v. *Waldrip* (1903) 141 Cal. 229, 232 [74 P. 744] [questioning the constitutionality of former section 2061, subdivision 4, but holding that giving or refusing the instruction would never warrant reversal because it "states a mere commonplace within the general knowledge of jurors"].) In *Hirshfeld* v. *Dana* (1924) 193 Cal. 142, 160 [223 P. 451], we observed that it was "settled law" that former section 2061, subdivision 4, is unconstitutional because it requires a charge to the jury with respect to matters of fact, and held that it "should never be made the basis of an instruction."

In 1934, the California Constitution was amended through the addition to article VI of former section 19, present section 10, which provides in its

current wording that a trial court "may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." (See *People* v. *Alvarez* (1996) 14 Cal.4th 155, 219, fn. 23 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Thereafter, in *People* v. *Dail* (1943) 22 Cal.2d 642, 656 [140 P.2d 828], we concluded that an instruction concerning accomplice testimony in conformity with former section 2061, subdivision 4, was "necessary in a proper case and the failure so to instruct may be reversible error." We emphasized the "questionable character" of such testimony, explaining that "[t]he fact that a person is an accomplice in the commission of a crime goes to his credibility as a witness and to the weight of his testimony." (22 Cal.2d at p. 653.)

Repudiating our earlier decision in *Hirshfeld* as "based upon a misconception," we held in *Dail* that an instruction to view accomplice testimony with distrust was "never void" under the California Constitution. (*People* v. *Dail, supra,* 22 Cal.2d at p. 656.) We observed: "The requirement of section 1111 of the Penal Code that accomplice testimony must be corroborated is a convincing indication of the legislative intent and policy that such evidence is to be regarded as untrustworthy . . . . [N]o valid reason exists why the Legislature may not declare, as it has done in subdivision 4 of section 2061, that the jury is to be instructed to view such accomplice testimony with distrust. . . . To require such an instruction on proper occasions is not to charge the jury upon matters of fact. It merely serves to state the legislative condition upon which the jury is permitted to hear that class of evidence." (*Id.* at p. 655.)

In *Dail,* the prosecution called several accomplices as witnesses against the defendant. The trial court gave an instruction in accordance with former section 2061, subdivision 4, but also instructed "under the guise of comment" that the testimony of the accomplices must be judged " 'by the *same standard* as that of any other witness.' " (*People* v. *Dail, supra,* 22 Cal.2d at p. 656, original italics.) We held that it erred thereby: "[A]n erroneous instruction upon the law cannot be deemed a justifiable comment on the evidence and credibility of a witness." (*Id.* at p. 657.)

Subsequently, in *People* v. *Hamilton* (1948) 33 Cal.2d 45, 51 [198 P.2d 873], we held that it was error for the trial court *not* to instruct the jurors, sua sponte, that the testimony of an accomplice called by the prosecution should be viewed with distrust. Since *Hamilton,* the cases in point have consistently affirmed that an instruction on accomplice testimony must be given on the court's own motion when the accomplice is called solely by the prosecution. (See, e.g., *People* v. *Terry* (1970) 2 Cal.3d 362, 399 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Cortez* (1981) 115 Cal.App.3d 395, 406 [171 Cal.Rptr.

418]; *People* v. *Cooper* (1970) 10 Cal.App.3d 96, 103 [88 Cal.Rptr. 919]; *People* v. *Carter* (1969) 275 Cal.App.2d 815, 824 [80 Cal.Rptr. 202].)

Former section 2061 was repealed effective January 1, 1967. The Law Revision Commission, which proposed the action as part of the legislation creating the Evidence Code in 1965, stated that it "should have no effect on the giving of the instructions contained in the section . . . ." (Cal. Law Revision Com. com., 21-22 West's Ann. Code Civ. Proc. (1983 ed.) foll. § 2061, p. 268; *People* v. *Cooper, supra,* 10 Cal.App.3d at p. 103, fn. 3 ["The repeal of the section was not intended to have any effect on the giving of the instructions contained therein and permitted or required to be given by decisional law."]; *People* v. *Cuellar* (1968) 262 Cal.App.2d 766, 770 [68 Cal.Rptr. 846].)

Second, *Williams* reiterates the long-standing requirement that when an accomplice is called by the defendant alone, it is error for the court to instruct the jurors sua sponte that it should view the testimony with distrust. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1314.)

The reason for the different rule when an accomplice is called by the defendant alone is evident: Because an accomplice does not ordinarily stand to benefit from providing testimony on behalf of the defendant, his or her statements are not necessarily suspect. As we explained in *People* v. *Garrison* (1989) 47 Cal.3d 746, 775 [254 Cal.Rptr. 257, 765 P.2d 419]: "The rule is otherwise for a prosecution witness since it is the accomplice's motive to testify falsely in return for leniency that underlies the close scrutiny given accomplice testimony offered against a defendant. [Citation.] A defendant is powerless to offer this inducement." (See also *People* v. *Simmons* (1946) 28 Cal.2d 699, 723 [172 P.2d 18]; *People* v. *Gonzales* (1970) 4 Cal.App.3d 593, 607 [84 Cal.Rptr. 863].) Indeed, a defendant will not ordinarily call an accomplice if the testimony is likely to be unfavorable.

Third, *Williams* reiterates the long-standing requirement that, when an accomplice is called by both the prosecution and the defendant, the trial court should tailor the instruction to relate only to his testimony on behalf of the prosecution. (*People* v. *Williams, supra,* 45 Cal.3d at p. 1314.)

Again, the reason for such a rule is clear. Although the testimony of an accomplice on behalf of the prosecution is subject to distrust because such witness has the motive, opportunity, and means to help himself at the defendant's expense, he or she ordinarily has no such motive, opportunity, or means when he testifies on behalf of the defendant.

Thus, in *People* v. *Watson* (1952) 113 Cal.App.2d 799 [249 P.2d 38], the prosecution and the defendant each called a different accomplice or possible

accomplice. The defendant claimed that, because he had called an accomplice to testify on his behalf, the trial court erred in giving the standard instruction that accomplice testimony should be viewed with distrust. The Court of Appeal found no error, but only because the instruction, as given, was assertedly "directed solely to prosecution witnesses whom the jury might find to be accomplices." (*Id.* at p. 803; see also *People* v. *Cortez, supra,* 115 Cal.App.3d at p. 406.) As discussed, *Williams* applied the same rule when the accomplice was called both by the prosecution and by the defense. We held that the trial court erred by failing sua sponte "to instruct the jurors that they should regard with distrust only [the accomplice's] testimony on behalf of the prosecution." (*People* v. *Williams, supra,* 45 Cal.3d at p. 1314.)

Whether the same, or a different, accomplice is called by both the prosecution and the defense, the rationale for requiring the trial court to modify the standard instruction remains the same: To the extent an accomplice testifies on behalf of the prosecution, the testimony is subject to the taint of an improper motive, i.e., that of promoting his or her own self interest by inculpating the defendant. To the extent such witness testifies on behalf of the defendant, the testimony is ordinarily subject to no such taint.[3]

The Court of Appeal concluded that our rule in *Williams* should not be applied in a rigidly formalistic manner; i.e., the accomplice instruction should turn not on which party "called" the witness, but on which party was "favored" by the testimony. It explained that, in applying *Williams,* it was adopting the "gloss" of *People* v. *Graham* (1978) 83 Cal.App.3d 736, 744 [149 Cal.Rptr. 6], which held that it was error, absent a request by the defendant, to instruct the jurors to view accomplice testimony with distrust "in a situation where the witness was called by the People but testified in favor of the defendant." At the same time, it acknowledged that such a rule places a burden on the trial court of parsing the evidence to determine whether or not it was "favorable." It also observed that such a rule can "lead to mischief" in cases involving both "favorable" and "unfavorable" testimony. A defendant could, in effect, require the court to choose the "proper" instruction based on its own determination whether all or part of the testimony was "favorable," without being bound thereby. Regardless of the choice made, the defendant would have reserved the right to claim error.

---

[3]The People point to apparently contradictory dictum in *People* v. *Toro* (1989) 47 Cal.3d 966, 975 [254 Cal.Rptr. 811, 766 P.2d 577]. The dictum consists of an analogy to the effect that "when an alleged accomplice testifies as a prosecution witness and then again as a defense witness, . . . contrary to the general rule that a jury instruction may be challenged on appeal even though no objection was raised at trial [citations], an objection to a cautionary instruction has been required before the defendant may assert error on appeal. . . ." *Toro* does not mention *Williams,* and did not purport to reconsider or alter our holding therein. We disapprove the dictum.

We agree that the rule in *Williams* should not be applied in a rigidly formalistic manner. We also agree that the trial court should not be required to parse the testimony of an accomplice to determine whether it may be construed as "favorable" or "unfavorable" to the defendant. For that reason, we disapprove *People* v. *Graham, supra,* 83 Cal.App.3d 736, to the extent it so requires. Instead, to avoid the burden on the trial court of such a requirement, and eliminate the potential for "mischief," we conclude, consistent with arguments by both the People and the defendant, that the instruction concerning accomplice testimony should henceforth refer only to testimony that tends to incriminate the defendant. The present instruction admonishes the jury to view such accomplice testimony "with distrust," explaining that it should view such testimony "with care and caution" in light of all the evidence. We conclude that the phrase "care and caution" better articulates the proper approach to be taken by the jury to such evidence.[4] Accordingly, we conclude that the jury should be instructed to the following effect whenever an accomplice, or a witness who might be determined by the jury to be an accomplice, testifies: "To the extent an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in the case." Such a pretailored instruction is applicable regardless which party called the accomplice. Like the instruction in *Williams* and our previous decisional law, the refined instruction casts doubt on the veracity of an accomplice who has an obvious motive to testify falsely, while reducing the burden on the trial court.

Justice Brown asserts, in her concurring and dissenting opinion, that we should overrule *Williams* by holding that the trial court is not required to give the instruction sua sponte. We disagree. It has long been one of the instructions on the "general principles of law" that trial courts must give on their own initiative. Moreover, as discussed, until the Legislature repealed Code of Civil Procedure section 2061 in 1965, trial courts were statutorily required to give the instruction. The repeal of the statute did not purport to abrogate this requirement, and it was continued by our decisional law.

### III.

 We review this claim, which involves the determination of applicable legal principles, under a de novo standard. After such review, we

---

[4]The word "caution," connoting "care and watchfulness," signals the need for the jury to pay special heed to *incriminating* testimony because it may be biased, but avoids the suggestion that *all* of the accomplice's testimony, including favorable testimony, is untrustworthy. To the extent *People* v. *Hamilton, supra,* 33 Cal.2d 45, 51, suggests otherwise, we disapprove its discussion on this point.

conclude that no instructional error appears. Although we conclude that, henceforth, the instruction on accomplice testimony should be "pretailored" to refer specifically to testimony favorable to the prosecution, the trial court properly gave an instruction consistent with *Williams* and with prior statutory and decisional law going back over half a century.

Guiuan's accomplices were called solely by the prosecution; none was also called by Guiuan. At the prosecution's request, the trial court gave the standard instruction to view accomplice testimony with distrust. Guiuan did not object. Neither did she request modification. She may not be heard now. "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People* v. *Andrews* (1989) 49 Cal.3d 200, 218 [260 Cal.Rptr. 583, 776 P.2d 285].)

### IV.

For the foregoing reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Werdegar, J., and Chin, J., concurred.

**KENNARD, J., Concurring.**—"A skeptical approach to accomplice testimony is a mark of the fair administration of justice. From Crown political prosecutions, and before, to recent prison camp inquisitions, a long history of human frailty and governmental overreaching for conviction justifies distrust in accomplice testimony." (*Phelps* v. *United States* (5th Cir. 1958) 252 F.2d 49, 52.)

I join that portion of the majority opinion holding that the trial court committed no instructional error in this case. Further, I agree with the majority that this court should not abrogate the long-established rule that trial courts, on their own initiative, must warn juries that the testimony of accomplices who testify on behalf of the prosecution is inherently unreliable, and I also agree that the pattern instruction currently used to convey this warning should be modified so that it may be used when both the prosecution and the defense have elicited and are relying on testimony given by an accomplice.

I disagree, however, with the wording of the proposed modification. Unlike the majority, I would advise jurors of the reasons why accomplice testimony should be viewed skeptically, because jurors will understand the warning better, and will be less apt to give accomplice testimony either more

or less weight than it deserves, if they understand the reasons why accomplice testimony may be inherently suspect. Finally, I would not remove from the cautionary instruction the word "distrust," which is amply justified by logic and precedent, although I would confine that word to its appropriate context—testimony favorable to the prosecution's case that may be influenced by the accomplice's desire for, or expectation of, benefits such as immunity from prosecution or leniency in charging or sentencing.

The pattern cautionary instruction on accomplice testimony currently used in our state trial courts is this: "You should view the testimony of an accomplice with distrust. This does not mean that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in the case." (CALJIC No. 3.18 (6th ed. 1996).) In its place, the majority directs trial courts to give this instruction: " 'To the extent an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in the case.' " (Maj. opn., *ante*, at p. 569.)

Neither instruction tells the jury *why* accomplice testimony should be evaluated with greater care and skepticism than the testimony of other witnesses. By contrast, the cautionary instruction for testimony by an in-custody informant does explain the reason for the warning: " 'The testimony of an in-custody informant should be viewed with caution and close scrutiny. In evaluating such testimony, *you should consider the extent to which it may have been influenced by the receipt of, or expectation of, any benefits from the party calling that witness.* This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled in the light of all the evidence in the case.' " (Pen. Code, § 1127a, subd. (b), italics added.) A cautionary instruction is more helpful and more effective if it states the reasons why special caution is warranted.

There are several reasons why jurors should view accomplice testimony with particular suspicion or skepticism.

The first reason for viewing accomplice testimony skeptically is that accomplices—because they are, by definition, persons who are liable to prosecution for the same offense with which the defendant is charged (Pen. Code, § 1111)—have a powerful built-in motive to aid the prosecution in convicting a defendant, regardless of the defendant's actual guilt or level of culpability, in the hope or expectation that the prosecution will reward the

accomplices' assistance with immunity or leniency. In other words, "[a] person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation." (*Williamson v. United States* (1994) 512 U.S. 594, 607-608 [114 S.Ct. 2431, 2439, 129 L.Ed.2d 476] (conc. opn. of Ginsburg, J.).)

There is solid historical justification for an accomplice's expectation that, even in the absence of an explicit agreement, the prosecution will reward testimony that results in a conviction by granting the testifying accomplice immunity from prosecution or at least leniency in charging or sentencing. "The old common law recognized a practice of 'approvement' under which a person arraigned for a felony might accuse another as his accomplice and become entitled to a pardon if the accused accomplice were convicted." (Hughes, *Agreements for Cooperation in Criminal Cases* (1992) 45 Vand. L.Rev. 1, 7, fns. omitted (Hughes); see also *Whiskey Cases* (1878) 99 U.S. 594, 599 [25 L.Ed. 399, 401]; Zimmerman, *Toward a New Vision of Informants: A History of Abuses and Suggestions for Reform* (1994) 22 Hastings Const.L.Q. 81, 152-156; Note, *Let's Make a Deal: A Look at United States v. Dailey and Prosecutor-Witness Cooperation Agreements* (1987) 67 B.U. L.Rev. 749, 761-762; Note, *Accomplice Testimony Under Conditional Promise of Immunity* (1952) 52 Colum. L.Rev. 138, 139.) The approvement system "fell into disuse because the likelihood of perjury by the accomplice was thought to outweigh the probative value of his testimony." (Note, *Accomplice Testimony Under Contingent Plea Agreements* (1987) 72 Cornell L.Rev. 800, 801.) In this regard, a statement by Chief Justice Hale is often quoted: " 'The truth is that more mischief hath come to good men, by these kinds of approvements by false accusations of desperate villains, than benefit to the public by the discovery and convicting of real offenders.' " (2 Hale, The History of the Pleas of the Crown (1678) 226, quoted in Hughes, *supra*, 45 Vand. L.Rev. at p. 7, fn. 19.)

Approvement was not the only system for rewarding accomplice testimony: "Apart from approvement, which fell into disuse by the eighteenth century, there also existed an informal practice by which an accused, though not legally entitled to a pardon, could obtain one by confessing to the crime and revealing his accomplices. This practice was rife in the nineteenth century when the lack of an organized police force often made it essential to procure accomplice testimony in order to track down or build a case against a major criminal. It was customary to advertise prominently the offer of pardons to accomplices who would come forward and testify leading to a conviction of the principal and to offer cash payments to witnesses who might come forward." (Hughes, *supra*, 45 Vand. L.Rev. 1, 7-8, fns. omitted.)

Thus, it is fair to say that "[t]he government has always solicited the help of cooperating witnesses to prosecute its cases [citations] and these witnesses, in turn, have traditionally been shown leniency at sentencing." (*U.S.* v. *Ming He* (2d Cir. 1996) 94 F.3d 782, 787.)

The word "distrust" correctly articulates the level of skepticism that a jury should use when considering how the hope or expectation of leniency or immunity may influence accomplice testimony that incriminates the defendant. The Legislature deliberately chose that word in 1872 when it enacted former section 2061 as part of the original Code of Civil Procedure, providing that "on all proper occasions," trial courts were to instruct jurors to view accomplice testimony "with distrust" but, by comparison, to view evidence of a party's oral admissions "with caution." Although in 1965 the Legislature repealed former section 2061 of the Code of Civil Procedure (Stats. 1965, ch. 299, § 127, p. 1366, eff. Jan. 1, 1967), the Law Revision Commission's comment to the repealing legislation states that because the section was "but a partial codification of the common law, the repeal should have no effect on the giving of the instructions contained in the section . . . ." (Cal. Law Revision Com. com., 21-22 West's Ann. Code Civ. Proc. (1983 ed.) foll. § 2061, p. 268.)

The choice of the word "distrust" reflects not only statutory precedent but also careful judicial reflection on the precise degree of skepticism with which a jury ought to regard accomplice testimony. This court has explained that the words "caution" and "distrust" are "quite different," that "caution" requires only "care and watchfulness" whereas "distrust" has "meanings ranging from doubt and suspicion to lack of confidence," and that, accordingly, "[a] jury's estimate of evidence which it was directed to view 'with caution' might, and ordinarily would, be quite different from the effect which it would give to the same evidence considered 'with distrust.'" (*People* v. *Hamilton* (1948) 33 Cal.2d 45, 51 [198 P.2d 873].)

As this court has explained, use of the stronger word "distrust," rather than "caution," is the logical complement of the statutory corroboration requirement for accomplice testimony: "At common law the fact that a witness was an accomplice resulted only in an instruction that his testimony was to be viewed with care, caution, and suspicion unless corroborated in any material matter by independent evidence. (*People* v. *Coffey* [(1911)] 161 Cal. 433, 438 [119 P. 901]; see also 7 Wigmore on Evidence (3d ed.) § 2056, pp. 312-322, and cases cited therein at fn. 10.) The limitation based on the common law distrust of accomplices as now embodied in [Penal Code] section 1111 [barring convictions based on uncorroborated accomplice testimony] is much harsher than the common law limitation. Juries are now

compelled rather than cautioned to view an accomplice's testimony with distrust, for while his testimony is always admissible and in some respects competent to establish certain facts (see *People* v. *McRae* [(1947)] 31 Cal.2d 184, 187 [187 P.2d 741] [probable cause to hold defendant to answer at preliminary hearing]), such testimony has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].)

In view of these considerations—the significant risk that a testifying accomplice will falsely put the blame on the defendant in the expectation that the prosecution will reward the testimony with immunity or leniency, the deliberate legislative choice of the word "distrust" rather than "caution" in formulating the appropriate warning to the jury, this court's recognition that "distrust" is a significantly stronger word that "caution," and this court's recognition that the corroboration requirement reflects a Legislature determination that accomplice testimony is inherently and gravely suspect—this court, until today, has continuously reaffirmed the rule that trial courts are to instruct juries that "[w]hen the prosecution calls an accomplice as a witness, the trial court must instruct the jury that the witness's testimony should be viewed with distrust." (*People* v. *Mincey* (1992) 2 Cal.4th 408, 461 [6 Cal.Rptr.2d 822, 827 P.2d 388]; accord, *People* v. *Williams* (1997) 16 Cal.4th 153, 225 [66 Cal.Rptr.2d 123, 940 P.2d 710]; *People* v. *Williams* (1988) 45 Cal.3d 1268, 1314 [248 Cal.Rptr. 834, 756 P.2d 221]; *People* v. *Gordon* (1973) 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298].) I would retain the word "distrust" in the cautionary instruction for accomplice testimony.

Apart from the accomplice's hope that the prosecution will reward testimony resulting in a conviction, there are sound reasons why accomplice testimony "ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." (*Crawford* v. *United States* (1909) 212 U.S. 183, 204 [29 S.Ct. 260, 268, 53 L.Ed. 465].)

Rarely are accomplices persons of integrity whose veracity is above suspicion. A witness's own character for honesty and truthfulness, as revealed by past criminal conduct, is a proper factor in assessing credibility. (See *People* v. *Wheeler* (1992) 4 Cal.4th 284, 295 [14 Cal.Rptr.2d 418, 841 P.2d 938].) An accomplice's participation in the charged crime is itself evidence of bad moral character and, depending on the crime, may indicate a penchant for dishonesty that should undermine confidence in the truthfulness of the accomplice's testimony, whether that testimony favors the

prosecution or the defense. (See Alarcon, *Suspect Evidence: Admissibility of Co-conspirator Statements and Uncorroborated Accomplice Testimony* (1992) 25 Loyola L.A. L.Rev. 953, 953-954 (Alarcon) [observing that accomplice testimony "is admissible even when uncontradicted evidence at trial has demonstrated that the . . . accomplice witness was a criminal of the vilest character"].)

Another reason for skepticism is the accomplice's obvious interest in avoiding or minimizing prosecution for the charged offense. Quite apart from any hope that the prosecution will grant the accomplice immunity or leniency as a reward for testimony that results in the defendant's conviction, it is in the accomplice's interest to persuade the prosecution that the offense is less serious than the charge indicates or that the accomplice's own role in its commission is relatively insignificant. (See Alarcon, *supra*, 25 Loyola L.A. L.Rev. 953, 960.) For this reason, accomplice testimony may falsely minimize the seriousness of the crime or the accomplice's culpability for it. Testimony portraying the offense as less serious than charged necessarily would favor the defense, but testimony minimizing the accomplice's role could favor either the prosecution (by shifting primary blame to the defendant) or the defense (by shifting primary blame to other individuals).

Finally, special caution is warranted because an accomplice's firsthand knowledge of the details of the criminal conduct allows for the construction of plausible falsehoods not easily disproved. This court has previously described the problem in these words: "[A]ccomplice testimony is frequently cloaked with a plausibility which may interfere with the jury's ability to evaluate its credibility. ' "[A]n accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth." ' (Heydon, *The Corroboration of Accomplices* (Eng. ed. 1973) Crim.L.Rev. 264, 266; see also Note, 54 Colum.L.Rev. 219, 234.)" (*People* v. *Tewksbury, supra*, 15 Cal.3d 953, 967; see also Note, *Accomplices in Federal Court: A Case For Increased Evidentiary Standards* (1990) 100 Yale L.J. 785, 787 ["Since the accomplice alone knows about the pattern of criminal events, he can manipulate the details of those events without blatant discrepancies."]; Hughes, *supra,* 45 Vand. L.Rev. 1, 33 ["Courts should instruct juries to consider how easily suspects with inside knowledge can fabricate testimony and the strong incentive for suspects to do so when their liberty may depend on it."].)

A jury that is warned of these specific reasons why accomplice testimony may be less than the whole truth will be prepared to properly assess the

credibility of such testimony. To convey this warning, I would direct trial courts to instruct juries substantially as follows: "In deciding whether to believe testimony given by an accomplice, you should use greater care and caution than you do when deciding whether to believe testimony given by an ordinary witness. Because an accomplice is also subject to prosecution for the same offense, an accomplice's testimony may be strongly influenced by the hope or expectation that the prosecution will reward testimony that supports the prosecution's case by granting the accomplice immunity or leniency. For this reason, you should view with distrust accomplice testimony that supports the prosecution's case. Whether or not the accomplice testimony supports the prosecution's case, you should bear in mind the accomplice's interest in minimizing the seriousness of the crime and the significance of the accomplice's own role in its commission, the fact that the accomplice's participation in the crime may show the accomplice to be an untrustworthy person, and an accomplice's particular ability, because of inside knowledge about the details of the crime, to construct plausible falsehoods about it. In giving you this warning about accomplice testimony, I do not mean to suggest that you must or should disbelieve the accomplice testimony that you heard at this trial. Rather, you should give the accomplice testimony whatever weight you decide it deserves after considering all the evidence in the case."

Like Justice Brown, I have a high opinion of jurors' abilities, and I agree that, in the words of Presiding Justice Gardner, "[a] juror is not some kind of a dithering nincompoop, brought in from never-never land and exposed to the harsh realities of life for the first time in the jury box." (*People* v. *Long* (1974) 38 Cal.App.3d 680, 689 [113 Cal.Rptr. 530].) Still, most jurors have only limited experience with the actual workings of the criminal justice system and the pressures that operate on testifying accomplices. Few jurors have ever been formally accused of a crime or put in a situation where their liberty may depend upon assisting the prosecution to obtain another's conviction. When their duties as jurors require them to confront situations and concepts with which they have only limited familiarity, most jurors, I think, would welcome instructions that explain not only the rules they are to follow in reaching their verdicts but also the reasoning that underlies those rules.

**BAXTER, J., Concurring.**—I concur in the majority's decision affirming the judgment of the Court of Appeal because no prejudicial instructional error appears. (Maj. opn., *ante*, at pp. 569-570.) I also wholeheartedly concur in the majority's revision of CALJIC No. 3.18 that henceforth will absolve trial courts of the sua sponte obligation to tailor the standard accomplice

cautionary instruction[1] to state it has no application to portions of an accomplice's testimony "favorable" to the defendant. That requirement derived from this court's opinion in *People* v. *Williams* (1988) 45 Cal.3d 1268 [248 Cal.Rptr. 834, 756 P.2d 221] (*Williams*)—the so-called "third prong" requirement that where an accomplice is called as a witness by both the prosecution and the defense, "the instruction should be [sua sponte] tailored to relate only to his testimony on behalf of the prosecution." (*Id.* at p. 1314.) The majority's revision of CALJIC No. 3.18 is an improvement over *Williams*'s "tailoring" requirement in that it lifts yet another unreasonable burden from the shoulders of our overworked trial courts—the sua sponte obligation to revise an instruction in a complex area of the law on a case-by-case basis—one that opens the door to reversal on appeal, with the "blame" then falling, in hindsight, on the overburdened trial court.

I further concur in the majority's determination to remove the term "distrust" from the standardized accomplice cautionary instruction. Notwithstanding its long-standing use, I fail to see the wisdom of such an overpowering directive, which as a practical matter instructs the jury to find the testifying accomplice lacking in credibility, a directive that invades the province of the jury and pays no deference to the jurors' collective wisdom, common sense and good judgment. There is presently no statutory requirement in California for retaining the specific term "distrust" in the standardized accomplice cautionary instruction, and indeed many states deem such an instruction, however worded, to be unnecessary, even when requested by the defense, because the corroboration requirement and general witness credibility instructions together serve as an adequate admonition to juries that accomplice testimony *may* be suspect. (See, e.g., *Ladson* v. *State* (1981) 248 Ga. 470 [285 S.E.2d 508, 514]; *State* v. *Reese* (Iowa 1981) 301 N.W.2d 693, 697; *Blizzard* v. *State* (1976) 30 Md.App. 156 [351 A.2d 443, 450]; *State* v. *LaJambe* (1974) 300 Minn. 539 [219 N.W.2d 917, 919]; *People* v. *Ely* (1990) 164 A.D.2d 442 [563 N.Y.S.2d 890, 891-892]; *State* v. *Lind* (N.D. 1982) 322 N.W.2d 826, 843; *State* v. *Hutchison* (Tenn. 1995) 898 S.W.2d 161, 172.)

I write separately only to indicate my uncertainty of the wisdom behind the requirement that the giving of an accomplice cautionary instruction such as that embodied in CALJIC No. 3.18 be made obligatory upon our trial courts in the first instance. (See *Williams, supra,* 45 Cal.3d at p. 1314; *People* v. *Terry* (1970) 2 Cal.3d 362, 399 [85 Cal.Rptr. 409, 466 P.2d 961].) As noted by Justice Brown, separate and apart from the cautionary admonition of CALJIC No. 3.18, "juries are more than adequately apprised of the

---

[1]The version applicable in this case was CALJIC No. 3.18 (5th ed. 1988). (Accord, CALJIC No. 3.18 (6th ed. 1996).)

pitfalls of accomplice testimony by a veritable slew of other standard jury instructions, including both the general witness credibility instructions and the extensive series of instructions given to implement the statutory accomplice corroboration requirement." (Conc. & dis. opn. of Brown, J., *post*, at p. 579, fn. omitted.) Moreover, respondent's brief cites numerous out-of-state decisions holding that an accomplice cautionary instruction such as that embodied in CALJIC No. 3.18 either need not be given even when requested (see cases cited *ante*, at p. 577), or in some jurisdictions is *prohibited* from being given altogether, because such a jury charge is deemed an improper comment on the evidence, one that improperly intrudes upon the jury's role as fact finder. (See, e.g., *Bates* v. *State* (Ala.Crim.App. 1986) 484 So.2d 1206, 1208; *State* v. *Lucio* (1979) 99 Idaho 765 [589 P.2d 100, 101]; *Buxton* v. *State* (Tex.Crim.App. 1983) 646 S.W.2d 445, 446.)

In this case, however, respondent is not challenging the underlying rule requiring that when an accomplice is called as a witness by the prosecution, the trial court has a sua sponte duty to instruct the jury, in the language we approve today, that "testimony unfavorable to the defendant should be viewed with care and caution." (Maj. opn., *ante*, at p. 561.) Nor has the matter been directly raised, addressed, or fully briefed by both parties to this case. As such, I will reserve my concerns and possible objection to the sua sponte nature of the instructional requirement for another day.

Chin, J., concurred.

**BROWN, J.,** Concurring and Dissenting.—I concur in the majority's decision insofar as it affirms the judgment of the Court of Appeal. I respectfully dissent from the majority's conclusion that "whenever an accomplice, or a witness who might be determined by the jury to be an accomplice, testifies," the jury must be instructed to examine the testimony " 'with care and caution and in the light of all the evidence in the case.' " (Maj. opn., *ante*, at p. 569 [outlining permanent revisions to CALJIC No. 3.18].) Such an instruction "does little to improve the quest for justice in the trial courts while frequently generating an argument for reversal on appeal. [Citation.]" (*People* v. *Prettyman* (1996) 14 Cal.4th 248, 293 [58 Cal.Rptr.2d 827, 926 P.2d 1013] (conc. & dis. opn. of Brown, J.).)

As several early decisions of this court correctly recognized, the cautionary instruction the majority requires trial courts to give sua sponte is unnecessary because it "states mere commonplace matter within the general knowledge of the jury." (*Hirshfeld* v. *Dana* (1924) 193 Cal. 142, 160 [223 P. 451]; see also *People* v. *Ruiz* (1904) 144 Cal. 251, 253 [77 P. 907]; *People* v. *Wardrip* (1903) 141 Cal. 229, 232 [74 P. 744].) The notion that an accomplice may have a motive to lie or to shade his or her testimony is scarcely

beyond the comprehension of the average juror. As Presiding Justice Gardner aptly put it, "[a] juror is not some kind of a dithering nincompoop, brought in from never-never land and exposed to the harsh realities of life for the first time in the jury box." (*People* v. *Long* (1974) 38 Cal.App.3d 680, 689 [113 Cal.Rptr. 530].)

In any event, juries are more than adequately apprised of the pitfalls of accomplice testimony by a veritable slew of other standard jury instructions, including both the general witness credibility instructions and the extensive series of instructions given to implement the statutory accomplice corroboration requirement.[1] A review of the instructions given to the jury in this case is instructive.

First, pursuant to CALJIC No. 2.20, entitled "Believability of Witness," the jury was instructed:

"Every person who testifies under oath is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each of the witnesses.

"In determining the believability of a witness you may consider anything that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following factors:

"The extent of the opportunity or the ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified;

"The ability of the witness to remember or communicate any matter about which the witness has testified;

"The character and quality of that testimony;

"The demeanor and manner of the witness while testifying;

"The existence or nonexistence of a bias, interest or other motive;

---

[1]The accomplice corroboration requirement is set forth in Penal Code section 1111, which provides as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

"Evidence of the existence or nonexistence of any fact testified to by the witness;

"The attitude of the witness toward this action or toward the giving of testimony itself;

"A statement previously made by the witness that is consistent or inconsistent with the testimony of the witness;

"An admission by the witness of untruthfulness;

"The witness' prior conviction of a felony offense."

Second, pursuant to CALJIC No. 3.10, entitled "Accomplice—Defined," the jury was instructed:

"An accomplice is a person who is subject to prosecution for the identical offenses charged in counts one, two, and three against the defendant on trial by reason of aiding and abetting or being a member of a criminal conspiracy."[2]

Third, pursuant to CALJIC No. 3.11, entitled "Testimony of Accomplice Must Be Corroborated," the jury was instructed:

"A defendant cannot be found guilty based upon the testimony of an accomplice unless such testimony is corroborated by other evidence which tends to connect such defendant with the commission of the offense.

"Testimony of an accomplice includes any out of court statement purportedly made by an accomplice received for the purpose of proving what the accomplice stated was true."

Fourth, pursuant to CALJIC No. 3.12, entitled "Sufficiency of Evidence to Corroborate an Accomplice," the jury was instructed:

"To corroborate the testimony of an accomplice there must be evidence of some act or fact related to the crime which if believed by itself and without any aid, interpretation or direction from the testimony of the accomplice tends to connect the defendant with the commission of the crime charged.

"However, it is not necessary that the evidence of corroboration be sufficient in itself to establish every element of the crime charged or that it

---

[2]In connection with this instruction, the jury was also given lengthy instructions defining the terms "aiding and abetting" and "criminal conspiracy." (See CALJIC Nos. 3.01, 6.10.)

corroborate every fact to which the accomplice testifies. In determining whether an accomplice has been corroborated, you must first assume that the testimony of the accomplice has been removed from the case. You must then determine whether there is any remaining evidence which tends to connect the defendant with the commission of the crime. If there is not such independent evidence which tends to connect the defendant with the commission of the crime, the testimony of the accomplice is not corroborated. If there is such independent evidence which you believe, then the testimony of [the] accomplice is corroborated."

Fifth, pursuant to CALJIC No. 3.13,. entitled "One Accomplice May Not Corroborate Another," the jury was instructed:

"The required corroboration of the testimony of an accomplice may not be supplied by the testimony of any or all of his or her accomplices, but must come from other evidence."

Sixth, pursuant to CALJIC No. 3.14, entitled "Criminal Intent Necessary to Make One an Accomplice," the jury was instructed:

"Merely assenting to or aiding or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of the perpetrator and without the intent or purpose of committing, encouraging or facilitating the crime is not criminal. Thus a person who assents to or aids or assists in the commission of a crime without such knowledge and without such intent or purpose is not an accomplice in the commission of the crime."

Seventh, and finally, pursuant to CALJIC No. 3.19, entitled "Burden to Prove Corroborating Witness Is an Accomplice," the jury was instructed:

"You must determine whether the witnesses, Prince W[.], Josh S[.] and Elisha F[.], were accomplices as I defined that term. The defendant has the burden of proving by the preponderance of the evidence that Prince W[.], Josh S[.] and Elisha F[.] were accomplices in the crimes charged against the defendant."[3]

Apparently subscribing to the notion that nothing succeeds like excess, the majority insists that juries must also be instructed to examine an accomplice's testimony " 'with care and caution and in the light of all the evidence

---

[3]In connection with this instruction, the jury was also given an instruction defining the term "preponderance of the evidence." (See CALJIC No. 2.50.2.)

in the case.' " (Maj. opn., *ante*, at p. 569.) Why? If the jury hasn't figured it out by now, 15 more words will not make a bit of difference.[4]

Fortunately, I do not share the majority's dim view of jurors. Rather, I would presume, as we do in virtually every other context, that jurors are "intelligent, capable of understanding instructions and applying them to the facts of the case. [Citation.]" (*Conservatorship of Early* (1983) 35 Cal.3d 244, 253 [197 Cal.Rptr. 539, 673 P.2d 209].) In my view, "by requiring the jury to find some evidence corroborating an accomplice's testimony, the jury is sufficiently informed of the inherently suspect nature of accomplice testimony." (*State* v. *Hutchison* (Tenn. 1994) 898 S.W.2d 161, 172.) Indeed, "the accomplice corroboration requirement arises out of, or is premised upon, the suspicion and caution with which the law views accomplice testimony [citations]." (*People* v. *Ely* (1990) 164 A.D.2d 442 [563 N.Y.S.2d 890, 892].) As this court explained in *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335], "[a]t common law the fact that a witness was an accomplice resulted only in an instruction that his testimony was to be viewed with care, caution, and suspicion unless corroborated in any material matter by independent evidence. [Citations.] The limitation based on the common law distrust of accomplices as now embodied in [Penal Code] section 1111 is much harsher than the common law limitation. Juries are now compelled rather than cautioned to view an accomplice's testimony with distrust, for while his testimony is always admissible and in some respects competent to establish certain facts [citation], such testimony has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated."

In other words, when a jury focuses on whether the remaining evidence in a case is sufficient to corroborate the testimony of an accomplice, it *is* viewing the accomplice's testimony " 'with care and caution and in the light of all the evidence in the case.' " (Maj. opn., *ante*, at p. 569.) Thus, as other states with accomplice corroboration requirements have recognized, when the full panoply of general witness credibility and accomplice corroboration instructions are given, as they were in this case, the majority's additional cautionary instruction is simply redundant. (See, e.g., *Ladson* v. *State* (1981) 248 Ga. 470 [285 S.E.2d 508, 514]; *State* v. *Reese* (Iowa 1981) 301 N.W.2d

---

[4]Ironically, both the majority opinion and the concurring opinion of Justice Kennard rely on former Code of Civil Procedure section 2061, which the Legislature repealed over three decades ago, as a justification for requiring even more cautionary instructions. (See maj. opn., *ante*, at p. 569; conc. opn. of Kennard, J., *ante*, at p. 573.) Significantly, however, neither opinion feels constrained by the language of the repealed statute in formulating their respective instructions. (See maj. opn., *ante*, at p. 569 [eliminating the word "distrust"]; conc. opn. of Kennard, J., *ante*, at pp. 575-576 [retaining the word "distrust" but otherwise dramatically expanding on the repealed statutory language].)

693, 696-698; *Blizzard* v. *State* (1976) 30 Md.App. 156 [351 A.2d 443, 449-450], revd. on other grounds in *State* v. *Blizzard* (1976) 278 Md. 556 [366 A.2d 1026]; *State* v. *LaJambe* (1974) 300 Minn. 539 [219 N.W.2d 917, 919]; *People* v. *Ely, supra,* 563 N.Y.S.2d at pp. 891-892; *State* v. *Lind* (N.D. 1982) 322 N.W.2d 826, 843; *State* v. *Hutchison, supra,* 898 S.W.2d at p. 172.)

Nor is it necessary to "advise jurors of the reasons why accomplice testimony should be viewed skeptically." (Conc. opn. of Kennard, J., *ante,* at p. 570; see *Blizzard* v. *State, supra,* 351 A.2d at p. 450 [rejecting such a requirement]; *State* v. *LaJambe, supra,* 219 N.W.2d at p. 919 [same]; *People* v. *Ely, supra,* 563 N.Y.S.2d at p. 892 [same].) I agree that " 'an accomplice's testimony *may* be strongly influenced by the hope or expectation that the prosecution will reward testimony that supports the prosecution's case by granting the accomplice immunity or leniency' " (conc. opn. of Kennard, J., *ante,* at pp. 575-576, italics added), that an accomplice *may* have an " 'interest in minimizing the seriousness of the crime and the significance of the accomplice's own role in its commission' " (*id.* at p. 576), that " 'the accomplice's participation in the crime *may* show the accomplice to be an untrustworthy person' " (*ibid.,* italics added), and that an accomplice *may* have a " 'particular ability, because of inside knowledge about the details of the crime, to construct plausible falsehoods about it' " (*ibid.*). These permissible inferences "may be fully explored on cross-examination and jury argument." (*State* v. *Reese, supra,* 301 N.W.2d at p. 697.) They are not, however, proper subjects for jury *instruction.* The facts of this case amply demonstrate why. Here, as in many other cases, much of the accomplice testimony cited by defendant could be construed as "favorable," "unfavorable," or both "favorable" and "unfavorable" simultaneously. (See maj. opn., *ante,* at pp. 563-564 & fn. 2.) Under these circumstances, an elaborate one-size-fits-all instruction is wholly inappropriate and risks intruding on the fact-finding province of juries.

Nor do I agree that the People are "not challenging the underlying rule requiring that when an accomplice is called as a witness by the prosecution, the trial court has a sua sponte duty to instruct the jury, in the language we approve today." (Conc. opn. of Baxter, J., *ante,* at p. 578.) The People devote a substantial portion of their briefing to explaining why the majority's cautionary instruction is unnecessary, noting that not a single other state with an accomplice corroboration requirement also imposes such a sua sponte instructional obligation on its trial courts. At oral argument, when asked about the possibility of a permanent revision to CALJIC No. 3.18, the People described it as "an absolute last resort" to their "first choice" of "eliminating the sua sponte instruction altogether." The People specifically

argued that there is "no reason why the trial court should *ever* be required as a matter of sua sponte instruction to instruct juries to distrust accomplice testimony." (Italics added.) Hence, the sua sponte nature of a trial court's instructional obligation falls well within the scope of the issues briefed and argued by the People.[5]

In conclusion, while the majority's permanent revision to CALJIC No. 3.18 is certainly an improvement over the current version of the instruction, in reality, there is no compelling reason to give the instruction at all. Thus, I would no longer require that it be given. Busy trial courts and juries have enough things to worry about. Superfluous jury instructions should not be one of them.

---

[5]Even if the People had not advanced such an argument, we would nonetheless have the inherent power to address it because it is necessary for a proper disposition of the case. (See *Philbrook* v. *Randall* (1924) 195 Cal. 95, 104-105 [231 P. 739]; *Schubert* v. *Lowe* (1924) 193 Cal. 291, 294 [223 P. 550]; *Burns* v. *Ross* (1923) 190 Cal. 269, 275-276 [212 P. 17]; *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 495 [144 Cal.Rptr. 474].) Here, the majority *extends* a trial court's sua sponte instructional obligation to a whole new class of cases. (Compare maj. opn., *ante*, at p. 569 [cautionary instruction must be given sua sponte "whenever an accomplice, or a witness who might be determined by the jury to be an accomplice, testifies"] with *People* v. *Williams* (1988) 45 Cal.3d 1268, 1314 [248 Cal.Rptr. 834, 756 P.2d 221] [cautionary instruction must not be given sua sponte when an accomplice is called by the defendant].) It makes little sense to establish this new rule of law without considering the sua sponte nature of the instructional obligation in the first instance.