Filed 4/6/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S205145 |
| v. | ) | |
| | ) | Ct.App. 6 H036414 |
| DORA DIAZ, | ) | |
| | ) | Santa Clara County |
| Defendant and Appellant. | ) | Super. Ct. No. CC954415 |
| _____ | ) | |

We granted review to resolve a conflict in the Courts of Appeal regarding whether a trial court has the duty to instruct a jury to consider a criminal defendant's out-of-court statements with caution when the statements at issue form the basis of a prosecution for making criminal threats. We also asked the parties to brief whether we should continue to require courts to instruct that a defendant's out-of-court statements must be viewed with caution even in the absence of a request.

We hold that the cautionary instruction is applicable when the statements at issue are criminal threats. However, the trial court is no longer required to give the instruction sua sponte. In the present case, the failure to give the instruction, even if error, was harmless.

## I. FACTS AND PROCEDURE

Defendant Dora Diaz was charged and convicted of one count of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187, 189, 664,

1

subd. (a))[1] and three counts of threatening to commit a crime resulting in death or great bodily injury (§ 422). The jury found defendant guilty on all four counts and the trial court sentenced her to a prison term of life, with the possibility of parole after seven years, for the attempted murder and a consecutive three-year four-month prison term for the three criminal threats.

The criminal threats charges stemmed from statements defendant made during and after the attempted murder of Eduardo Morales. On September 5, 2009, Eduardo lived in a two-room apartment in San Jose with his mother, Marta Rosales, his sister-in-law, Indira Pineda, and three other family members. Defendant had recently ended a relationship with Eduardo. Between 1:00 a.m. and 1:30 a.m., Eduardo was asleep in the apartment's living room when he awoke to knocking on the window and door. He peeked out the window and saw defendant and two women he did not recognize yelling at him to come out. While putting on his shoes to go outside, he heard one of the apartment's windows break. He opened the door and asked the women why they were doing this to him. The three women grabbed Eduardo by his hair, which was long, and dragged him into the driveway. Marta called 911 to report that her son was being assaulted.

The three women began hitting and kicking Eduardo in his face and chest. Eduardo was knocked to the ground and covered himself. During the attack, the women were calling him names and one yelled, "*Puro catorce*," which an expert later testified constituted a declaration that the Norteño street gang was responsible for the attack.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

2

Defendant then stepped back, snapped her fingers twice, and whistled. Three men, including one who looked like defendant's 16-year-old son, emerged and joined in the beating. One of the men had a knife with a four- or five-inch blade; he began stabbing Eduardo.

Marta came out of the apartment and pleaded with the assailants to cease the attack on her son. Eduardo called out to tell her that he had been stabbed. Possibly alerted by the sound of sirens, some of the assailants retreated to a dark-colored Lincoln Town Car. Defendant remained and lifted Eduardo's shirt so she could view his wounds. When looking at the wounds, defendant laughed. Defendant then argued with Marta and Eduardo's sister-in-law, Indira, who also had come out of the house. Defendant and Indira grabbed at each other and exchanged words. Eventually, defendant ran off.

The three counts of criminal threats correspond with statements allegedly made by defendant to Eduardo, Marta, and Indira during the attack. Each testified concerning the statements. Eduardo testified that when defendant lifted his shirt to view his wounds, she told him "that if [he] did not die this time, that [he] surely would the next time and that she was going to finish off [his] whole family." He further testified that he saw defendant arguing with Indira and calling her names, but he could not recall whether defendant had said anything else to Indira.

Marta testified that defendant told Eduardo, "If you don't die from this one, you'll die next time around." She further testified that defendant threatened her, saying "you're going to pay for this" and that defendant "would kill every member of [Marta's] family one by one." She recalled defendant also telling Indira, "you're going to pay for this." Marta's husband, Alvaro Hernandez, testified that defendant told his wife that she was going to kill everyone.

Indira testified that while the women were dragging Eduardo out by his hair, defendant "was telling him, 'I'm going to kill you.'" Later, she said,

3

defendant told Eduardo that "if he didn't die from this one, he would die from the next one." Indira further testified, "she did say that she could possibly kill all of us . . . Marta, Eduardo, and whoever else lived there." Indira testified that defendant told her specifically, "You're going to pay for this . . . I'm going to kill you."

Prior to jury deliberations, the trial court provided standard instructions on the elements of the crimes, the presumption of innocence, the burden of proof, the treatment of circumstantial evidence, and credibility considerations when assessing witness testimony. Defendant did not request, nor did the court provide on its own motion, CALCRIM No. 358, which instructs the jury to "[c]onsider with caution" any unrecorded statement made by the defendant tending to show his or her guilt.[2]

On appeal, defendant argued that omission of this instruction was reversible error. The Court of Appeal affirmed defendant's conviction, holding that any error in omitting the instruction was harmless in light of the other instructions the jury received and the evidence in the case. The Court of Appeal expressly disagreed with *People v. Zichko* (2004) 118 Cal.App.4th 1055 (*Zichko*). In *Zichko*, a defendant who had been convicted of making criminal threats argued that the trial court had erred in failing to give CALJIC No. 2.71, which, like

---

[2]    CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

4

CALCRIM No. 358, advises jurors that "[e]vidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution." *Zichko* held that the cautionary instruction is not to be given in a criminal threats case, in which the statement constitutes the criminal act itself.[3] (*Zichko, supra*, at p. 1058.) It reasoned that the cautionary instruction should be given only when the statement reflects an "admission." *Zichko* concluded that in a criminal threats case, where the statements constitute the criminal act itself, they do not constitute admissions because the truth of the threats is immaterial. (*Id*., at p. 1060.) It also concluded that the cautionary instruction is "inconsistent with the reasonable doubt standard of proof." (*Ibid*.) *Zichko* reasoned that giving the cautionary instruction in a criminal threats case may lead a jury to believe it could find a defendant guilty "even if it did not conclude beyond a reasonable doubt that the statements were made, as long as the jury exercised 'caution' in making its determination." (*Ibid*.) The Court of Appeal in the present case concluded that *Zichko* "seems to have created a false dichotomy between a statement that constitutes a crime and a statement that is evidence of a crime."

## II. ANALYSIS

### A. Applicability of the Cautionary Instruction to Criminal Threats

As we explain below, case law recognizes that the purpose of the instruction — to aid the jury in evaluating whether the defendant actually made

---

**3** CALJIC No. 2.71 provides: "An admission is a statement made by [a] [the] defendant which does not by itself acknowledge [his][her] guilt of the crime[s] for which the defendant is on trial, but which statement tends to prove [his][her] guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part. [¶] [Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution.]"

the statement — is served regardless of whether the statement constitutes all or part of the criminal act and whether it is admitted for its truth. Contrary to the reasoning of *Zichko*, we see no conflict between the cautionary instruction and the requirement of proof beyond a reasonable doubt.

In 1872, the Legislature codified as part of the Code of Civil Procedure certain instructions regarding the effect of evidence, to be given to the jury "on all proper occasions." (Code Civ. Proc., former § 2061.) These included instructions "that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." (Code Civ. Proc., former § 2061, subd. 4; see *People v. Ford* (1964) 60 Cal.2d 772, 799.) Code of Civil Procedure former section 2061 was not limited to criminal cases, and the statutory requirement has long been reflected in the pattern jury instructions applicable to both civil and criminal cases.[4]

The Legislature repealed Code of Civil Procedure, former section 2061 in 1965 when it adopted the Evidence Code. (Stats. 1965, ch. 299, § 127, p. 1366, operative Jan. 1, 1967.) The Law Revision Commission explained that because "the section is but a partial codification of the common law, the repeal should have

---

[4]      (See CALJIC No. 29-D (1st ed. 1946) ["The law of this state admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant [or an oral confession by him]"]; Cal. Jury Instructions, Civil, No. 8 (1938) ["evidence of the oral admission of a party, other than by his own testimony in this trial, ought to be viewed by you with caution"]; see also CACI No. 212 (2014 ed.) ["A party may offer into evidence any oral or written statement made by an opposing party outside the courtroom. [¶] . . . [¶] You should view testimony about an oral statement made by a party outside the courtroom with caution"]; BAJI No. 2.25 (2014 ed.) ["A statement made by a party before trial that has a tendency to prove or disprove any material fact in this action and which is against that party's interest is an admission. Evidence of an oral admission not made under oath should be viewed with caution"].)

6

no effect on the giving of the instructions contained in the section or on the giving of any other cautionary instructions that are permitted or required to be given by decisional law." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) com. on repeal foll. Code Civ. Proc., § 2061, p. 358.) Subsequently we held, citing the Law Revision Commission's report, that the repeal had no effect on the court's obligation to give the instructions contained in the former statute. (*People v. Beagle* (1972) 6 Cal.3d 441, 455, fn. 4 (*Beagle*).)

In order to evaluate the circumstances in which the cautionary instruction is applicable, we begin with the considerations that give rise to the need for caution. The extrajudicial admission of a party — that is, any statement by a party to an action that is offered against that party — is admissible in evidence regardless of its hearsay character. (Evid. Code, § 1220; see Code Civ. Proc., former § 1870, subd. 2, enacted 1872 and repealed by Stats. 1965, ch. 299, § 58, p. 1360, operative Jan. 1, 1967.) "This kind of testimony is considered dangerous, first, because it may be misapprehended by the person who hears it; secondly, it may not be well remembered; thirdly, it may not be correctly repeated." (*People v. Gardner* (1961) 195 Cal.App.2d 829, 832.) Even witnesses with the best intentions often cannot report the " 'exact language' " used by a defendant, and therefore may convey, through errors and omissions, an inaccurate impression of a defendant's statements. (*People v. Bemis* (1949) 33 Cal.2d 395, 399.) " 'No other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the party himself.' (2 Jones, Commentaries on the Law of Evidence, 620.)" (*Ibid.*) Even if the party testifies, it may be difficult to convincingly dispute evidence of an extrajudicial admission because the party has an obvious interest in the outcome of

7

a case. "It was undoubtedly such considerations that led the Legislature to make the admitting of extrajudicial admissions into evidence conditional on the giving of a cautionary instruction." (*Ibid*.) The cautionary instruction "is designed to aid the jury in determining whether an admission or confession was in fact made." (*Id*. at p. 400.)

We recognized in *People v. Carpenter* (1997) 15 Cal.4th 312 (*Carpenter*) that "[t]he rationale behind the cautionary instruction suggests it applies broadly." (*Id*. at pp. 392-393.) In *Carpenter*, the defendant was charged with murder and attempted rape. An eyewitness testified that, prior to the killing, the defendant told the victim, " ' "I want to rape you." ' " (*Id*. at p. 392.) We noted that the statement of intent "was part of the crime itself," and we reiterated our observation in *Beagle* that " '[f]or purposes of requiring . . . cautionary instructions, we have not distinguished between actual admissions [citation] and pre-offense statements of intent [citation]. [Citations.]' " (*Carpenter,* at p. 392, quoting *Beagle*, *supra*, 6 Cal.3d at p. 455, fn. 5 [cautionary instruction required with respect to arsonist's preoffense statement].) We also reiterated the reason for not excluding preoffense statements from the ambit of the instruction: "[A]lthough the risk of conviction because of a false preoffense statement alone is less than the risk of conviction upon a false confession or admission, 'we find the risk of an unjust result sufficient to justify our broader rule.' " (*Carpenter,* at p. 392, quoting *Beagle*, at p. 455, fn. 5.) Finally, we observed that " '[t]he purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made.' [Citation.] This purpose would apply to any oral statement of the defendant, whether made before, during, or after the crime." (*Carpenter,* at p. 393.) Consistent with *Carpenter*, CALCRIM No. 358 does not use the term "admissions" and requires caution regarding "any statement made by (the/a)

8

defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded."**5**

The Attorney General argues that *Carpenter*'s assertion that the instruction applies to "any oral statement of the defendant" constitutes dicta set out in the context of statements that tend to *prove* the crime — admissions and preoffense statements of intent — and should not be extended to statements that *constitute* the criminal act itself. Although *Carpenter* did not actually address a statement that constituted the charged criminal act, its reasoning applies fully to such statements. The risk that a witness will report the defendant's statement inaccurately or falsely is just as great in a case involving a threat as in a case involving a confession or a preoffense statement of intent. And the risk that inaccurate or false testimony will lead to an unjust result is just as great when the statement constitutes the charged criminal act as it is when the statement merely provides evidence of the criminal act.

The court in *Zichko* misinterpreted *Carpenter* as holding that "the instruction applies to any oral *admission*." (*Zichko, supra*, 118 Cal.App.4th at p. 1059, italics added.) *Zichko* then reasoned that the instruction did not apply to a verbal threat because a threat did not fall within its definition of an "admission." (*Ibid*.) Both the language and rationale of *Carpenter* make clear, however, that the instruction applies to any oral *statement* by the defendant, used to show guilt, regardless of whether it fits any particular definition of "admission." *Zichko* also went astray in focusing on the circumstance that the statements at issue constituted

---

**5** In contrast, the CALJIC instruction discussed in *Zichko, supra*, 118 Cal.App.4th 1055, requires that "Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution." (CALJIC No. 2.71.)

9

a criminal act whose truth was not material. "[W]hether defendant's statements were 'verbal acts' and therefore not hearsay (Evid. Code, §§ 125, 1200) or admissions but admissible as an exception to the hearsay rule (Evid. Code, §§ 1204, 1220) does not determine whether they should be viewed with caution." (*People v. Ramirez* (1974) 40 Cal.App.3d 347, 352; see *People v. McKinnon* (2011) 52 Cal.4th 610, 679 [cautionary instruction applicable to defendant's oral threats, used to prove his guilt of murder].) The cautionary instruction is concerned with the reliability and credibility of the witness who testifies about the defendant's statements. Such concerns are present regardless of whether the statement is offered for its truth or as a verbal act whose truth is not relevant. For this reason, the cautionary instruction applies to statements that are not admitted for their truth, such as a statement admitted to show the defendant's state of mind or a false exculpatory statement admitted as evidence of consciousness of guilt.[6]

---

[6] In limiting application of the cautionary instruction to "admissions," *Zichko* found support in the circumstance that the CALJIC version of the cautionary instruction at issue in that case directs the jury to determine "whether [the] statement is true in whole or in part." (CALJIC No. 2.71 and quoted by *Zichko, supra*, 118 Cal.App.4th at p. 1060.) *Zichko* noted that there would be no reason to instruct a jury to determine whether a threat was true because a threat may be a crime "even if there is no intent of actually carrying it out." (§ 422 and quoted by *Zichko*, at p. 1060.) The pattern jury instructions, however, "are not themselves the law, and are not authority to establish legal propositions or precedent." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) In contrast to the CALCRIM instructions (which include one cautionary instruction that is applicable to all oral statements of the defendant), CALJIC includes separate instructions tailored to different types of statements: a defendant's oral confession (CALJIC No. 2.70), an admission not amounting to a confession (CALJIC No. 2.71), and a preoffense statement of intent, plan, motive, or design (CALJIC No. 2.71.7). The circumstances that the CALJIC instruction drafted to apply to admissions includes language that may not be appropriate when the defendant's statements are offered as proof of a verbal act, and that the CALJIC drafters have not created an instruction specifically applicable to statements offered as proof of a verbal act, do

*(footnote continued on next page)*

10

(See *People v. Brackett* (1991) 229 Cal.App.3d 13, 17-20; *People v. Mendoza* (1987) 192 Cal.App.3d 667, 675-676; but see *People v. La Salle* (1980) 103 Cal.App.3d 139, 151 [criticizing the definition of "admission" in CALJIC No. 2.71 because it could apply to nonhearsay], disapproved on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 496 & fn. 12.)  Thus, the cautionary instruction applies to any extrajudicial oral statement by the defendant that is used by the prosecution to prove the defendant's guilt — it does not matter whether the statement was made before, during, or after the crime, whether it can be described as a confession or admission, or whether it is a verbal act that constitutes part of the crime or the criminal act itself.  We disapprove *People v. Zichko, supra*, 118 Cal.App.4th 1055 to the extent it reaches a contrary conclusion.

Echoing *Zichko*, *supra*, 118 Cal.App.4th at page 1060, the Attorney General argues that, in the context of a criminal threats case, the cautionary instruction conflicts with the requirement that the elements of the offense, including the threat itself, be proved beyond a reasonable doubt.  The Attorney General contends that the cautionary instruction could mislead jurors to believe they could find a defendant guilty of making a criminal threat without proof beyond a reasonable doubt that the threat was made, as long as they exercise caution in making that determination.  This argument is not persuasive.  The cautionary instruction does not conflict with the reasonable doubt instruction because the two instructions serve distinct purposes and aid the jury in different ways.  The reasonable doubt instruction informs the jury that it must find the facts

---

*(footnote continued from previous page)*

not support the conclusion that a cautionary instruction is inapplicable to criminal threats.

11

required for conviction to be proved with the specified level of certainty before it may convict the defendant.  (CALCRIM No. 220.)  The cautionary instruction, on the other hand, advises jurors that in deciding whether to believe a witness's testimony about the defendant's statements, they must exercise particular caution. The two instructions, together, inform the jury that it must determine whether each of the elements of the crime has been proved beyond a reasonable doubt, and that in making that determination it must exercise special caution in considering one particular type of evidence.

Furthermore, nothing in the wording of the instructions would suggest to a jury that the cautionary instruction was meant to apply in lieu of — rather than in addition to — the reasonable doubt instruction.  The CALCRIM instructions given in the present case permit a conviction for criminal threats only if the People prove all of the elements of the offense.  (See CALCRIM No. 1300.)  The reasonable doubt instruction informed the jury, "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise]."  (CALCRIM No. 220.)  The language of the cautionary instruction does not reference the People's burden of proof or the elements of the offense, or in any other way suggest to jurors that the instruction was meant to create an exception to the rule that all elements of the crime must be proved beyond a reasonable doubt.[7]

---

[7]    Also unavailing is the Attorney General's contention that the language in CALCRIM No. 358 directing a jury to "decide how much importance to give to the statement[s]" indicates that the cautionary instruction was never intended to be given when the statement constitutes the criminal act itself.  Because the instruction is not itself authority, whether or not it was so intended does not affect our analysis.  (See *People v. Morales, supra*, 25 Cal.4th at p. 48, fn. 7.)  In any event, it is not clear that the language directing a jury to consider the importance of the statement is inapplicable in a criminal threats case.  In such a case, the jury

*(footnote continued on next page)*

12

**B. Trial court's duty to instruct on its own motion**

We asked the parties to brief whether the cautionary instruction should continue to be required in the absence of a request by the defendant. As we explain below, the trial court's sua sponte obligation to give the cautionary instruction was originally based on Code of Civil Procedure former section 2061. Following that statute's repeal, we continued to recognize the obligation without analyzing whether the requirement is warranted. We now conclude that in light of a change in the law that requires the general instructions on witness credibility to be given sua sponte in every case, the cautionary instruction is not one of the general principles of law upon which a court is required to instruct the jury in the absence of a request. The cautionary instruction does not reflect a legal principle with which jurors would be unfamiliar absent the instruction, and the defendant may not always want the instruction to be given. Nevertheless, the instruction may be useful to the defense in highlighting for the jury the need for care and caution in evaluating evidence of the defendant's statements. Finally, we explain that the fact that the Legislature has imposed a sua sponte duty to give the instruction in *certain* circumstances in juvenile cases does not require that *all* criminal defendants receive the same treatment under equal protection principles.

"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and

---

*(footnote continued from previous page)*

must determine not only whether the statement was made but also whether it was intended to "be taken as a threat" and whether it caused the victim to "fear for his or her . . . safety." (§ 422.)

13

which are necessary for the jury's understanding of the case." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531; see *People v. Delgado* (2013) 56 Cal.4th 480, 488.) We long ago held that, under Code of Civil Procedure former section 2061, a trial court in a criminal case was obligated to advise the jury on the court's own motion to consider a defendant's extrajudicial statements with caution. (*People v. Bemis, supra*, 33 Cal.2d at p. 399.) After the repeal of Code of Civil Procedure former section 2061 we continued to so hold (see *Carpenter, supra*, 15 Cal.4th at p. 392), but none of our cases has until now carefully examined whether the cautionary instruction is one of those "general principles of law" so "necessary for the jury's understanding of the case" that the instruction must be given by the trial court even when the defendant does not request it.

Our early cases identified the language of Code of Civil Procedure former section 2061 — requiring that the cautionary instruction be given "by the Court on all proper occasions" — as the basis for imposing a sua sponte duty on the trial court to give the cautionary instruction. (See, e.g., *People v. Koenig* (1946) 29 Cal.2d 87, 94 ["*In view of the code section* . . . such a cautionary instruction should have been given" (italics added)]; *People v. Cornett* (1948) 33 Cal.2d 33, 40 ["It is clear that *in view of the foregoing code section* the trial court should have given such a cautionary instruction" (italics added)]; *People v. Bemis, supra*, 33 Cal.2d at p. 399 [noting that "the Legislature [made] the admitting of extrajudicial admissions into evidence conditional on the giving of a cautionary instruction"]; *People v. Ford, supra*, 60 Cal.2d at p. 799 [quoting Code Civ. Proc., former § 2061's language that the jurors " 'are . . . to be instructed by the court on all proper occasions' " to view " 'oral admissions of a party . . . with caution' "].)

After the repeal of Code of Civil Procedure former section 2061 in 1967, our seminal case addressing the trial court's sua sponte instructional duties respecting a criminal defendant's out-of-court admissions was *Beagle, supra*, 6

14

Cal.3d 441. There we affirmed that the trial court had a sua sponte duty to give this instruction. (*Id*. at p. 455.) As primary authority, we cited *People v. Ford*, *supra*, 60 Cal.2d at page 799, a case based on the statutory provision. (*Beagle*, at p. 455.) We observed in a footnote that "Although Code of Civil Procedure section 2061, requiring the cautionary instruction, was repealed effective January 1, 1967, the repeal does not affect the decisional law," citing the Law Revision Commission comment to that effect discussed above. (*Id*. at p. 455, fn. 4.) We also cited two Court of Appeal decisions: *People v. Blankenship* (1970) 7 Cal.App.3d 305 and *People v. Reed* (1969) 270 Cal.App.2d 37. (*Beagle, supra*, at p. 455, fn. 4.) Those Court of Appeal decisions likewise observed that cases like *Ford* and *Bemis* remained valid despite the repeal of Code of Civil Procedure section 2061, because, the Law Revision Commission's comment to the repealed section suggested the repeal "should have no effect on the decisional law requiring cautionary instructions." (*Blankenship*, at p. 310; accord, *Reed*, at p. 43, fn. 2.) We have since affirmed this rule without discussion in a number of cases, all of which trace back to our holding in *Beagle*. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1200 [citing *Beagle*]; *People v. Williams* (1988) 45 Cal.3d 1268, 1315 [citing *Beagle*]; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1224 [citing *Beagle*]; *People v. Heishman* (1988) 45 Cal.3d 147, 166 [citing *Beagle*]; see also *People v. Lang* (1989) 49 Cal.3d 991, 1021 [citing *Williams*, *Bunyard*, *Heishman*, and *Beagle*]; *Carpenter, supra*, 15 Cal.4th at p. 392 [citing *Beagle*, *Lang,* and *Ford*].)

Reconsidering the issue in light of the general principles regarding the court's duty to provide instructions, we conclude that the instruction need not be given sua sponte. The cautionary instruction on admissions is no longer "*necessary* for the jury's understanding of the case" (*People v. St. Martin*, *supra*, 1 Cal.3d at p. 531, italics added) because courts are now required to instruct the jury,

15

in all criminal cases, concerning the general principles that apply to their consideration of witness testimony. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883-884.)

Although instructions on witness credibility were included in the pattern instructions given at the time that *Beagle* was decided in 1972, no authority required that they be given sua sponte. (See CALJIC No. 2.20 (3d ed. 1970) [Credibility of Witnesses].) The standard CALJIC instruction included a statement that the jurors are the exclusive judges of witness credibility, which Penal Code section 1127 requires to be given in every criminal case. It also included the list of factors affecting witness credibility contained in Evidence Code section 780, which provides examples of matters that may be relevant to witness credibility. No case or statute, however, required that the jury be instructed on these factors. In 1975, we stated that "the substance" of CALJIC No. 2.20, including the factors that affect witness credibility, "should henceforth always be given." (*People v. Rincon-Pineda, supra*, 14 Cal.3d at p. 883 [holding that courts should no longer instruct juries to consider with caution the testimony of the complaining witness in a rape case].)

Consistent with the instructions required by *Rincon-Pineda*, current instructions advise the jury to consider, among other things, how well a witness could "see, hear, or otherwise perceive the things about which the witness testified," how well the witness was "able to remember and describe what happened," and whether the witness's testimony was influenced by "bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided." (CALCRIM No. 226.) These general instructions, like the cautionary instruction, "aid the jury in determining whether [the defendant's extrajudicial statement] was in fact made." (*People v. Bemis, supra*, 33 Cal.2d at p. 400.) Consequently, the erroneous omission of the

16

cautionary instruction has frequently been held to be harmless error in light of such general instructions on witness credibility. (See *People v. Dickey* (2005) 35 Cal.4th 884, 906; *Carpenter, supra*, 15 Cal.4th at p. 393; *People v. Bunyard, supra*, 45 Cal.3d at p. 1225.) Because courts must now instruct the jury on these general factors in every case, we conclude that the cautionary instruction on defendant's statements is no longer so necessary to the jury's understanding of the case as to require the court to give it sua sponte.

The cautionary instruction regarding a defendant's statements stands in contrast to instructions that convey a legal principle with which jurors would be unfamiliar in the absence of instruction from the court. This distinction is illustrated by *People v. Najera* (2008) 43 Cal.4th 1132, in which we held that the trial court had no duty to instruct the jury on its own motion that possession of recently stolen property is insufficient by itself to establish guilt of theft-related offenses. We compared the instruction at issue with instructions concerning the corpus delicti rule and the requirement that the testimony of an accomplice be corroborated. Those instructions reflected legal rules that certain types of evidence are insufficient, alone, to establish guilt — rules of which the jurors would not be aware without instruction. (*Id*. at pp. 1136-1137.) In contrast, the rule that possession of stolen property is insufficient in itself to establish guilt of theft is "merely a specific application of the general instruction governing circumstantial evidence." (*Id*. at p. 1138.) We explained that " 'an instruction that tells the jury what kinds of rational inferences may be drawn from the evidence does not provide any insight jurors are not already expected to possess.' [Citation.] Such instructions, although helpful in various circumstances, are not vital to the jury's ability to analyze the evidence and therefore are not instructions that must be given to the jury even in the absence of a request." (*Id*. at p. 1139.) Likewise, the cautionary instruction concerning the defendant's extrajudicial

17

statements may be helpful in some circumstances but is not "vital to the jury's ability to analyze the evidence." (*Ibid.*)

Furthermore, it is more appropriate to permit defendants to determine whether to request the instruction than to require the trial judge to give it in every case. In *People v. Livaditis* (1992) 2 Cal.4th 759, 782-784 (*Livaditis*), we held that the cautionary instruction regarding defendant's admissions need not be given at the penalty phase of a capital case in the absence of the defendant's request. We reasoned that at that phase, "whether a particular statement is aggravating or mitigating is often open to interpretation." (*Id.* at p. 783.) Because advising caution might not be in the defendant's interest in that context, a trial court need not give the cautionary instruction unless it is requested by the defendant.

In *Livaditis*, we distinguished a case that rejected the defendant's argument that the cautionary instruction should not have been given at the guilt phase because the defendant's statements were both exculpatory and inculpatory — *People v. Vega* (1990) 220 Cal.App.3d 310 (*Vega*). (*Livaditis, supra*, 2 Cal.4th at pp. 783-784.) *Vega* reasoned that because the CALJIC instruction given in that case referred to defendant's admission, and defined an admission as a statement tending to prove guilt, the jury would understand that only statements tending to prove guilt should be viewed with caution. (*Vega*, at p. 317.) We later reached the same conclusion in *People v. Slaughter, supra*, 27 Cal.4th at page 1200. In *Livaditis*, we reasoned that at "a penalty phase, the distinction between mitigation and aggravation is often more blurred than the distinction between a statement that incriminates and one that does not. A statement, for example, that the defendant is sorry he stabbed the victim to death is both mitigating and aggravating. It admits guilt but also expresses remorse." (*Livaditis*, at p. 784.)

Although the line between mitigating and aggravating statements may tend to be more blurred than the line between incriminating statements and exculpatory

18

statements, the difference is only a matter of degree. A statement that is exculpatory on its face could be incriminating if proved to be false. (See, e.g., *People v. Mendoza*, *supra*, 192 Cal.App.3d at pp. 675-676 [defendant's exculpatory statements to police that were proved to be false, showing consciousness of guilt, constituted admissions to which the cautionary instruction applied].) It is not uncommon that the statements of a defendant contain both incriminating and exculpatory elements. In *Vega*, for example, the defendant was charged with robbery, vehicle theft, and kidnapping. In some of his statements to police, he admitted taking the vehicle but stated that he did not intend to keep it and took it only "temporarily because of an emergency." (*Vega, supra*, 220 Cal.App.3d at p. 317.) The decision in *Vega* recognized that "it is not uncommon that a single statement may tend to prove guilt or innocence, depending upon the state of the remaining evidence and the issue for which it is being considered." (*Id*. at pp. 317-318.) Despite its recognition that a statement may include both incriminating and exculpatory elements, *Vega* declined to require the trial court to modify the instruction in such circumstances and relied upon the jury to understand the word "admission" and apply it only to incriminating statements. (*Id*. at p. 318.) A defendant, however, might prefer not to rely on the jury's ability to discriminate between those incriminating admissions it should view with special caution and those exculpatory statements that are not subject to the instruction. Or a defendant might not contest that the incriminating portions of his or her statements were made, and wish to avoid any risk that the jury might apply the cautionary instruction to portions of the statements that he or she wanted the jury to accept. Therefore, it is appropriate to allow the defendant to make the strategic decision whether to request the instruction.

It is true that we have rejected the argument that we should eliminate the court's sua sponte duty to give an instruction directing the jury to consider an

19

accomplice's statement with distrust — an instruction that also derived from Code of Civil Procedure former section 2061, subdivision 4. (*People v. Guiuan* (1998) 18 Cal.4th 558.) The majority in *Guiuan* stated that "[i]t has long been one of the instructions on the 'general principles of law' that trial courts must give on their own initiative. . . . The repeal of [section 2061] did not purport to abrogate this requirement, and it was continued by our decisional law." (*Id.* at p. 569.) Nevertheless, we did not feel constrained in *Guiuan* to maintain the instructional duty precisely as it was set forth in the statute. Although we concluded that the duty to give the instruction regarding accomplice testimony had not been abrogated, we modified the instruction's language to require " 'care and caution' " rather than " 'with distrust.' " (*Ibid.*) In addition, in order to remove the burden on the trial court to modify the instruction when accomplice testimony is presented by, or is favorable to, the defendant, we modified the language of the instruction to refer "only to [accomplice] testimony that . . . incriminate[d] the defendant. (*Ibid.*) As *Guiuan* demonstrates, the language of former section 2061, even as perpetuated in our decisions after its repeal, need not inhibit the continuing development and refinement of the common law rules that it embodied.

The People urge us to conclude not only that the cautionary instruction concerning a defendant's extrajudicial statements need not be given on the court's own motion but also that it should never be given, even when a defendant requests it. We decline to do so. Although the instruction is not absolutely necessary to the jury's understanding of the case whenever there is evidence of a defendant's extrajudicial statements, it can be useful in highlighting for the jury the need to carefully consider a type of evidence that is particularly vulnerable to distortion, whether intentional or accidental. (See *People v. Bemis*, *supra*, 33 Cal.2d at pp. 399-400.)

20

Both parties argue that the recent adoption of section 859.5 favors their position, but none of their arguments is persuasive. Section 859.5, subdivision (a) requires that custodial interrogations of juvenile murder suspects be recorded. If such an interrogation is not recorded, the court must instruct the jury to "view with caution the statements made in [the] custodial interrogation." (§ 859.5, subd. (e)(3).) The Attorney General argues that the Legislature's imposition of a sua sponte duty on the court to give the cautionary instruction under these narrow circumstances implies a considered decision not to require it more generally for all oral admissions, and thus supports the conclusion that the instruction need not be given sua sponte. The decisional law at the time the Legislature adopted section 859.5, however, required the cautionary instruction on admissions to be given sua sponte. There is no reason to believe that, in requiring a special cautionary instruction in cases in which law enforcement has not complied with the statutory requirements for recording the statements of juveniles suspected of homicide, the Legislature implicitly intended to change the law applicable to other cases.

Defendant, on the other hand, argues that the Legislature's adoption of section 859.5, subdivision (e)(3) demonstrates that, contrary to the Attorney General's argument, the Legislature concluded that the general instructions concerning witness credibility are not an adequate substitute for a cautionary instruction concerning a defendant's statements. We disagree. There is no indication that the Legislature thought that the general instructions on witness credibility would be insufficient in cases not addressed by section 859.5. The special instruction contemplated in section 859.5 is intended to be a remedy for law enforcement's failure to follow that law. (§ 859.5, subd. (e).)

Finally, defendant contends that elimination of the sua sponte duty to give the general cautionary instruction concerning admissions would create an equal protection problem, because defendant is assertedly similarly situated to the

21

juvenile defendants to whom section 859.5 applies. Defendant is not similarly situated to juvenile murder suspects who are interrogated in custody in violation of section 859.5. No law requires that a defendant's admissions be recorded. In adopting section 859.5, the Legislature explicitly recognized the special problems created by the custodial interrogation of juvenile suspects, and the corresponding need for accurate recordings of those interrogations, particularly in murder cases. (Sen. Bill No. 569 (2013-2014 Reg. Sess.) § 1 [legislative findings].) These special problems clearly are not applicable in defendant's case, in which the oral admissions at issue were not made during a police interrogation and defendant was not a murder suspect.

### C. Harmless error

We need not decide whether the new rule we announce today — eliminating the court's sua sponte duty to give the cautionary instruction on defendant's extrajudicial statements — applies retroactively because, in any event, the omission of the cautionary instruction was harmless. We apply the standard for state law error: Whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. (*People v. Watson* (1956) 46 Cal.2d 818, 835-836.) Failure to give the cautionary instruction is not a violation of federal due process warranting the "more stringent standard" of review for federal constitutional error. (*Carpenter*, *supra*, 15 Cal.4th at p. 393.) "Since the cautionary instruction is intended to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the [statements] were repeated accurately." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1268.)

22

Concerning the convictions for criminal threats, the testimony of Eduardo, Marta, and Indira regarding the substance and meaning of defendant's threatening statements was largely consistent. Each testified that defendant told Eduardo that if he did not die this time, he would die the next time. Each also testified that defendant said she would kill their entire family. Even though Eduardo could not remember all that had been said to Indira, Marta and Indira both testified that defendant had told Indira that she was going to "pay for this." The minor variations in the exact wordings of these statements are not the sort of inconsistencies that would cause a jury to question whether the statements were actually made, even when the testimony is viewed with caution. Not only was this testimony generally consistent, but there was no evidence contradicting these witnesses' testimony that the statements were made. (See *People v. Dickey, supra*, 35 Cal.4th at p. 906 ["Where there was no such conflict in the evidence, but simply a denial by the defendant that he made the statements attributed to him, we have found failure to give the cautionary instruction harmless."].)

Defense counsel did make two arguments in an attempt to cast doubt on the prosecution's evidence of criminal threats. First, defense counsel contended that if defendant had made the threats, the jury would be able to hear these threats on a 911 call that Marta made during the attack. The prosecution played a recording of the call for the jury and the court provided a translated transcript. The recording of the 911 call contains roughly 60 seconds during which a female voice can be heard screaming but the actual words are mostly incomprehensible. Given the recording's inconclusive nature, it is not reasonably probable that the jury would have been more likely to find it exonerating had the trial court given the cautionary instruction.

Second, in an apparent attempt to suggest to the jury that the witnesses had conspired to present false testimony, defense counsel asked Eduardo, Marta, and

23

Indira whether they had discussed the attack prior to trial. After each replied in the negative, the defense suggested to the jury in closing arguments that this was "a really bad, huge fat lie." No evidence suggested that the witnesses had coordinated their testimony. It is unlikely that this argument would have been significantly bolstered by provision of the cautionary instruction.

Furthermore, the instructions provided by the trial court concerning witness credibility informed the jury of the need to evaluate the witnesses' testimony for possible inaccuracies and determine whether the statement was in fact made. The jury was instructed with CALCRIM No. 226, which sets out the numerous factors the jury may consider in deciding whether a witness's testimony is credible. "[W]hen the trial court otherwise has thoroughly instructed the jury on assessing the credibility of witnesses, we have concluded the jury was adequately warned to view their testimony with caution." (*People v. McKinnon*, *supra*, 52 Cal.4th at p. 680; see *Carpenter*, *supra*, 15 Cal.4th at p. 392 [finding trial court's instruction on witness credibility prevented prejudice where there was no evidence that the statements were not made].)

Turning to the attempted murder conviction, defendant argues that the trial court's failure to give the cautionary instruction was prejudicial because the evidence of the defendant's statements was used to prove the intent element of attempted murder and the finding that the attempted murder was deliberate and premeditated. In addition to the evidence of defendant's criminal threats discussed above, Indira testified that defendant told Eduardo, as the women dragged him out by his hair, that she was going to kill him. A police investigator who interviewed Marta three days after the stabbing testified that Marta told him that defendant had shouted "Die! Die! Die!" during the attack. Although, in her testimony, Marta denied relaying those words to the investigator, she testified that she remembered defendant saying "If you don't die from this one, you'll die from the next one."

24

The absence of the cautionary instruction was not prejudicial as to the attempted murder conviction or the finding that the attempted murder was deliberate and premeditated. Although the prosecution referred to the "Die! Die! Die!" language in closing arguments, it expressly acknowledged that it was uncertain whether this statement was made. Although the statement described by Marta in court was different from the statement described by the investigator, her testimony also strongly suggested an intent to kill. No evidence contradicted Indira's statement that defendant told Eduardo she was going to kill him, and the circumstantial evidence strongly supported the prosecution's theory that defendant had planned the attack. The jury heard testimony from Eduardo, Marta, and Indira that defendant snapped her fingers and whistled to call forth associates — young gang members — who were lying in wait, and that one of them stabbed Eduardo repeatedly in defendant's presence. In light of all the evidence, it is not reasonably probable that the jury would have returned a verdict more favorable to defendant on the attempted murder count had the trial court provided the cautionary instruction. Accordingly, we conclude that the omission of the cautionary instruction in this case was harmless.

### III. CONCLUSION

The decision of the Court of Appeal is affirmed.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

25

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Diaz
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 208 Cal.App.4th 711
**Rehearing Granted**

_____

**Opinion No.** S205145
**Date Filed:** April 6, 2015
_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Ron M. Del Pozzo

_____

**Counsel:**

Dallas Sacher and Syda Kosofsky, under appointments by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Jeffrey M. Laurence, Stan Helfman, Christopher J. Wei, Luke Fadem and Masha A. Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Dallas Sacher
100 N. Winchester Boulevard, Suite 310
Santa Clara, CA  95050
(408) 241-6171

Masha A. Dabiza
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5515