Filed 11/24/15  P. v. Poynter CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C076585 |
| v. | (Super. Ct. No. 13F07093) |
| MARKICE YUVALDUVAN POYNTER, | |
| Defendant and Appellant. | |

A jury convicted defendant Markice Yuvalduvan Poynter of first degree burglary, extortion, and receiving stolen property, and the trial court found two prior prison term allegations true.  The trial court sentenced defendant to nine years eight months in prison.

Defendant now contends the trial court erred in failing to instruct the jury with CALCRIM No. 358, the cautionary instruction regarding his out-of-court statements. Concluding that any error was harmless, we will affirm the judgment.

BACKGROUND

Marcella W. lived in an apartment with her partner and the partner introduced Marcella to defendant. Marcella attended school, received financial aid, and claimed defendant knew when she received her aid payments.

After Marcella's partner went to jail for domestic abuse, defendant moved into the apartment across from Marcella. When Marcella would leave her apartment, defendant would call her names and brag that he carried guns, had been involved in a shootout, and had been charged with murder. He would threaten to hit her in the face.

Defendant also started pushing his way into Marcella's apartment without permission and demanding to borrow money. Marcella gave defendant money on "almost a daily basis," explaining that she felt she had no other choice. When she asked him to pay her back, he pulled out a gun and took her money. One time when she said she did not have any, he punched her refrigerator, putting dents in it.

On another occasion, defendant kicked in her door and said that she could not stop him. She called 911 but pretended to talk to someone else fearing defendant would hurt her. The apartment managers confirmed that Marcella had reported defendant kicking in her door, that defendant had admitted the same, and that defendant said he would fix the door.

The next month, defendant demanded $100 from Marcella, telling her he was "going to get money from [her]." Marcella believed she had no choice because he had previously pulled a gun on her. Marcella responded that she only had checks. Defendant forced her to go with him to a check cashing business. When they arrived, Marcella asked for a payday advance but could not supply references or a phone number so her request was denied. Marcella and defendant returned to the business 30 minutes later.

2

Defendant introduced himself as Marcella's nephew and provided a phone number. Marcella received a payday advance of $255. They left the business and defendant took $100 from her. The employee at the check cashing business confirmed that it was unusual for Marcella to seek a payday advance because she usually only cashed her aid checks. The employee said defendant was with Marcella and acted aggressively.

At a convenience store, defendant made Marcella pay for $40 or $50 worth of goods for him. After they left, defendant demanded more money and took $10.

A week later, defendant entered Marcella's apartment without permission and demanded that she move out and allow "these two guys into [her] place." Defendant threw a stereo across the room at her. She refused to move out. Defendant hit her so hard she thought she passed out.

Prior to defendant's arrest for an unrelated parole violation at the apartment complex in October 2013, Marcella walked by and defendant threatened to "punch [her] in the f------ face." Marcella then reported defendant's threats, assaults, and thefts to the sheriff's deputies. Deputies arrested defendant shortly thereafter. In Marcella's apartment, the deputies noticed dents in her refrigerator that appeared to have been made by knuckles.

Marcella claimed that defendant had taken her apartment and mailbox keys. A search of defendant's apartment revealed a backpack with keys on a key ring. One of the keys fit Marcella's mailbox.

During trial, the prosecution presented a number of the out-of-court statements made by defendant to Marcella (the subject of defendant's contention on appeal).

Defendant testified, denying that he forced her to give him money, threatened her, destroyed her property, or hit her. He claimed he helped Marcella by making repairs to her apartment and mediating disputes she had with other tenants in the complex. He admitted that he got mad and kicked in her door after she failed to pay $250 that she owed him. He claimed Marcella decided on her own to repay him by obtaining a payday

3

loan. He admitted accompanying her to the check cashing business and said she gave him $160 from the loan. He denied asking her for more money. Defendant also denied owning the backpack containing Marcella's mailbox key.

The jury convicted defendant of first degree burglary (Pen. Code, § 459 -- count four),[1] extortion (§ 520 -- count seven), and receiving stolen property (§ 496, subd. (a) -- count eight). In connection with count four, the jury found that a person, other than an accomplice, was present during commission of the offense (§ 667.5, subd. (c)(21)). The jury could not reach a verdict on the remaining counts (kidnapping, kidnapping to commit robbery, robbery, dissuading a witness, felon in possession of a firearm, and misdemeanor brandishing) and a mistrial was declared as to those counts which were later dismissed on the People's motion. In bifurcated proceedings, the trial court found two prior prison term allegations to be true. (§ 667.5, subd. (b))

The court sentenced defendant to state prison for an aggregate term of nine years eight months.

DISCUSSION

Defendant contends counts four and seven must be reversed because the trial court prejudicially erred in failing to instruct sua sponte in the language of CALCRIM No. 358 to view defendant's out-of-court statements with caution.[2] The People agree that the trial

---

[1] Undesignated statutory references are to the Penal Code.

[2] CALCRIM No. 358 provides:

"You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

4

court had a sua sponte duty to instruct with CALCRIM No. 358, but they argue reversal is not required because the error was harmless.

After briefing was completed in this case, the California Supreme Court held that a trial court no longer has a sua sponte duty to instruct with CALCRIM No. 358. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1181, 1183, 1188-1190, 1195 (*Diaz*).) But the Supreme Court did not decide whether the new rule applies retroactively, concluding that the failure to instruct in that case was harmless. (*Ibid*.) We also conclude that any error in failing to instruct with CALCRIM No. 358 in this case was harmless.

"The cautionary instruction is concerned with the reliability and credibility of the witness who testifies about the defendant's statements. Such concerns are present regardless of whether the statement is offered for its truth or as a verbal act whose truth is not relevant. For this reason, the cautionary instruction applies to statements that are not admitted for their truth, such as a statement admitted to show the defendant's state of mind or a false exculpatory statement admitted as evidence of consciousness of guilt. [Citations.] Thus, the cautionary instruction applies to any extrajudicial oral statement by the defendant that is used by the prosecution to prove the defendant's guilt -- it does not matter whether the statement was made before, during, or after the crime, whether it can be described as a confession or admission, or whether it is a verbal act that constitutes part of the crime or the criminal act itself." (*Diaz, supra*, 60 Cal.4th at p. 1187, fn. omitted, disapproving *People v. Zichko* (2004) 118 Cal.App.4th 1055.)

Here, the prosecution presented out-of-court statements made by defendant to Marcella. Under the law prior to *Diaz*, the trial court was required to give the cautionary instruction sua sponte but it did not do so. (*Diaz, supra*, 60 Cal.4th at pp. 1181, 1188-1190, and cases cited therein.) We conclude, however, that the omission of the instruction was harmless because it is not reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. (*Id.* at p. 1195; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

5

" 'Since the cautionary instruction is intended to help the jury determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the [statements] were repeated accurately.' [Citation.]" (*Diaz, supra*, 60 Cal.4th at p. 1195.) "Where there was no such conflict in the evidence, but simply a denial by the defendant that he made the statements attributed to him," the error is harmless. (*People v. Dickey* (2005) 35 Cal.4th 884, 906.)

Marcella testified to several statements made to her by defendant. No one else testified for the prosecution that he or she heard defendant make any such statements to Marcella. Defendant denied making any threatening statements to Marcella.

Further, the trial court gave other instructions informing the jury of the factors to consider in evaluating a witness's credibility (CALCRIM No. 226), conflicting evidence (CALCRIM No. 302), and prior statements as evidence (CALCRIM No. 318). " '[W]hen the trial court otherwise has thoroughly instructed the jury on assessing the credibility of witnesses, we have concluded the jury was adequately warned to view their testimony with caution.' [Citations.]" (*Diaz, supra*, 60 Cal.4th at p. 1196.)

Here, the jury convicted defendant on only three of the nine charges against him. The jury appears to have convicted defendant on the counts where there was some evidence corroborating Marcella's claims. (First degree burglary (count four): the apartment managers' testimony and defendant's trial admission to kicking in Marcella's apartment door); extortion (count seven): the cash checking business employee's testimony and defendant's trial admission that he accompanied Marcella to the business; and receiving stolen property (count eight): when defendant was arrested, he had in his belongings Marcella's mailbox key which had been stolen.) We conclude the omission of the cautionary instruction was harmless under the circumstances here.

6

## DISPOSITION

The judgment is affirmed.

_____/S/_____
Mauro, J.

We concur:


_____/S/_____
Blease, Acting P. J.


_____/S/_____
Renner, J.