Filed 7/23/25  P. v. Loma CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PABLO CIMIENTO LOMA,<br><br>        Defendant and Appellant. | A172590<br><br>(Riverside County<br>Super. Ct. No. INF1900352) |

A jury convicted Pablo Cimiento Loma of oral copulation, sexual intercourse with a person under 16 years of age, and lewd and lascivious acts upon a child.[1]  The trial court found two aggravating factors true, and it sentenced him to ten years, four months in prison.  On appeal, Loma alleges instructional error.  We affirm.

## BACKGROUND

In summary, Jane Doe was Loma's sister-in-law.  She testified he touched her inappropriately on various occasions.  The first time was in her grandmother's pool when he used his foot to touch her twice in between her legs.  Another time, Jane was sleeping at Loma and M.S.'s apartment;

---

[1] The California Supreme Court transferred this matter from the Court of Appeal for the Fourth Appellate District to the First Appellate District on February 25, 2025.

M.S. — Loma's wife and Jane's sister — was at work. He woke Jane up, tried to take off her shirt, took off his shorts, and had sex with her. She let him put his penis into her vagina even though she "didn't like it." He told her she "better not tell anyone." Later that night, he woke her up again, placed his hand on her breast, and forced his penis into her mouth; after, he pulled her shorts down and had sex with her once more.

Two nights later — and ten days after she turned 15 — Jane again spent the night at Loma's apartment. She awoke to his hand on her breast under her shirt; his other hand was on her thigh, close to her panty line and under her clothing. He'd placed his mouth on her breast when M.S. entered the room, saw him, and began "stomping him" and kicking him off of Jane. Jane ran outside and called her friend, who picked her up. M.S. called 911 and reported Loma "tried to rape" her "little sister," and she saw him "kissing [Jane's] breasts or something." Police were dispatched to the apartment where they spoke with M.S. While she was speaking to the police, Loma called. She took the call over speakerphone, and the officer's body-worn camera recorded the call. During the call, Loma said, "I fucked up. Do you understand me? I fucked up, [M.]" When M.S. asked, "What did you do, Pablo?," he replied, "I just did what you sa– what you saw me do." Later he said, "I didn't do anything. But I know that I did – what I did was a mistake that I shouldn't have done. Seriously. I lost . . . my family. I'm losing it. . . . [F]orgive me, [M.]"

The trial court instructed the jury with CALCRIM No. 358. The court told the jury: "You have heard evidence that the defendant made an oral statement before the trial. You must decide whether the defendant made any such statement in whole or in part. If you decide the defendant made such a statement, consider the statement along with all the other evidence in

2

reaching your verdict. It is up to you to decide how much importance to give to the statement." The court also gave the bracketed portion of CALCRIM No. 358: "Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded."[2]

The jury convicted Loma of oral copulation, sexual intercourse with a person under 16 years of age, and lewd and lascivious acts upon a child. (Pen. Code, former § 288a,[3] subd. (c)(2)(C) (count 1), §§ 261.5, subd. (d) (counts 2–3), 288, subd. (c)(1) (counts 4–6).) In a bifurcated proceeding, the trial court found two aggravating factors true. The court sentenced Loma to a total of ten years, four months in prison.

## DISCUSSION

Loma argues the trial court prejudicially erred by instructing the jury with CALCRIM No. 358's bracketed language. We disagree.

We independently review claims of instructional error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." (*People v. Cross* (2008) 45 Cal.4th 58, 67–68.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can

---

[2] The trial court's discussion with counsel about jury instructions was generally unreported except for disagreements, which were placed on the record. The record does not reflect any discussion concerning CALCRIM No. 358, including whose idea it was to give the bracketed language.

[3] Penal Code section 288a was renumbered 287, effective January 1, 2019.

3

understand and correlate all instructions given." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

Relying primarily on *People v. Xiong* (2020) 54 Cal.App.5th 1046, Loma contends it was error to instruct the jury with the bracketed portion of CALCRIM No. 358. *Xiong* explained that the "bracketed language [of CALCRIM No. 358] may be appropriately given if the subject inculpatory statements were oral and were not memorialized in a recording." (*Xiong*, at p. 1080.) "However, the cautionary instruction *should not* be given ' " '[I]f the oral admission was tape-recorded and the tape recording was played for the jury.' " ' " (*Ibid.*) Noting his "statement, in the form of [his] confession to his wife, [M.S.], over speakerphone with a police officer listening, was recorded and played to the jury," Loma argues the bracketed language should not have been given, and it could have caused the jury to believe "they were *required* to believe the recorded confession." (Italics added.) We are unpersuaded.

In arguing it was error to instruct with the bracketed language, Loma ignores that the jury *did* hear evidence of an unrecorded, oral, inculpatory statement. To wit, there was evidence he told Jane — before he had sex with her — that she "better not tell anyone." As the Attorney General correctly observes, this statement was "inculpatory because the request to Jane Doe not to tell anyone about their relationship demonstrated a recognition of wrongdoing." Thus, absent a defense request not to give the bracketed language, the trial court did not err by instructing the jury to consider the unrecorded inculpatory statement with caution. (*People v. Xiong, supra,* 54 Cal.App.5th at pp. 1080–1081.) No such defense request or objection appears in the record.

4

Moreover, we disagree with Loma's assertion that the bracketed language in CALCRIM No. 358 "instructed the jury that they were required to believe" his statements to M.S. because they were recorded. The purpose of CALCRIM No. 358 is "to aid the jury in evaluating whether the defendant actually made the statement," not to instruct the jury as to the statement's truth. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1184.) When the bracketed language is read together with the unbracketed portion of CALCRIM No. 358, it is apparent that the former does *not* instruct the jury to place more weight on defendant's statement simply because it was recorded. To the contrary, the instruction makes clear the jury should consider a "statement along with all the other evidence," and that it is for the jury "to decide how much importance to give to the statement." Notably, neither counsel referenced the instruction during closing arguments, nor did the prosecution argue the jury was required to believe the statement because it was recorded. (*People v. Nelson* (2016) 1 Cal.5th 513, 545 [considering closing arguments when deciding whether instructions were interpreted in the way defendant asserts].)

Finally, because Loma made both recorded and unrecorded inculpatory statements, we acknowledge that defense counsel could have asked the trial court not to give CALCRIM No. 358's bracketed language. (*People v. Xiong*, *supra*, 54 Cal.App.5th at pp. 1080–1081 [error to give bracketed language when defense counsel asks that it not be given].) But we reject Loma's contention that his attorney provided ineffective assistance by failing to do so.

To establish ineffective assistance, Loma must first establish "counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013)

5

57 Cal.4th 986, 1009.) Next, he must show "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Ibid.*) On direct appeal, we will reverse for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*) Loma has not met this difficult burden.

During his call to M.S., Loma acknowledged he had "fucked up" and had done "what [she] saw [him] do." While he admitted it "was a mistake that [he] shouldn't have done" and might cost him his family, he otherwise denied doing anything. And when M.S. said he had Jane's breast in his mouth, Loma disagreed. "No. Uh, look, I was just about to do that. I wasn't going to – I wasn't going to do that." In sum, far from a broad confession, Loma merely admitted to doing what M.S. had seen him do and denied doing anything else. Given this, his counsel could have reasonably concluded that giving the bracketed language would ensure the jury viewed with caution the evidence that Loma had told Jane not to tell anyone they'd had sex. As for his recorded statement, if believed, it simply consisted of him taking responsibility for acts regarding which there was ample corroborating evidence and denying everything else, i.e., "I didn't do anything. For real, [M.]. I didn't – I just did what you sa– what you saw me do." In short, Loma's counsel might well have had a rational tactical reason not to oppose the giving of the bracketed language. No ineffective assistance appears.

## DISPOSITION

The judgment is affirmed.

6

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.

A172590; *People v. Loma*

7