Filed 5/9/16  P. v. Jimenez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA CAIN JIMENEZ,<br><br>    Defendant and Appellant. | B262250<br><br>(Los Angeles County<br>Super. Ct. No. KA103273) |

APPEAL from judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Joshua Cain Jimenez appeals from a judgment and sentence, following his conviction for making criminal threats against his estranged wife, Cynthia Castaneda. He contends (1) that the trial court erred in admitting prior uncharged crimes and other character evidence, (2) that the court erred in not instructing the jury, sua sponte, that his out-of-court statements should be viewed with caution; and (3) that there was insufficient evidence to support his conviction. He further contends that the court abused its discretion in denying his *Romero*[1] motion to strike prior "strikes," and that it improperly imposed two five-year enhancements under Penal Code section 667, subdivision (a)(1).[2] For the reasons set forth below, we will affirm the conviction, vacate one five-year enhancement, and remand for resentencing.

# PROCEDURAL HISTORY

Appellant was charged in an information with first degree burglary of Castaneda's residence (§ 459; count 1), and making criminal threats against Castaneda and their daughter, N. (§ 422, subd. (a); counts 2 & 3). It was further alleged that appellant had suffered two strikes within the meaning of the "Three Strikes" law, had two prior serious felonies within the meaning of section 667, subdivision (a)(1), and had served five prior prison terms.

A jury convicted appellant of count 2 (criminal threats against Castaneda) and acquitted him of the remaining counts. In a bifurcated proceeding, the trial court found true allegations that appellant had suffered two strikes and that he had

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[2] All further statutory citations are to the Penal Code, unless otherwise stated.

been convicted of two serious felonies under section 667, subdivision (a). The court also found true four of the prior prison term allegations.

Although the trial court denied appellant's *Romero* motion to strike either of his prior "strikes," it struck the four prior prison term allegations. The court sentenced appellant to 25 years to life, plus five years for each of the two section 667, subdivision (a)(1) enhancements, for a total of 35 years to life.

Appellant timely appealed from the judgment.

## FACTUAL BACKGROUND

Castaneda testified that she married appellant in 2004, but that they separated in 2009. Over defense objections, Castaneda explained that the separation resulted from appellant's physical and verbal abuse due to his drug habit. Castaneda also stated that after they separated, appellant did not pay child support.

On April 16, 2012, appellant called Castaneda, and threatened her, saying he would "blow your fuckin' head off." Castaneda believed appellant's threat because "[h]e always carrie[d] a gun, had guns on him." Appellant subsequently pled no contest to making criminal threats.

On May 25, 2012, Castaneda called 911 after appellant came to her residence and "pound[ed]" on her door. She also called 911 on March 27, 2012, after appellant broke into her gated community and began chasing her then-boyfriend.

On September 12, 2013, Castaneda, N. and appellant were in a vehicle when an altercation erupted between Castaneda and appellant. Castaneda caught appellant looking through her purse, wallet and cell phone. She thought he might have taken some money because he had stolen her credit card before. Appellant

3

began yelling at Castaneda and called her a "whore." In response, Castaneda reminded appellant that he talked to other girls, including a girl who had called him for drugs. Appellant denied supplying drugs. Eventually Castaneda drove to appellant's mother's house. She tried to drop appellant off, but he refused to leave. He grabbed her hand, and Castaneda swung her arms at appellant, scratching him in the face with the ring on her hand. As a result of the incident, Castaneda pleaded no contest to a misdemeanor count of inflicting corporal injury on a spouse or ex-spouse. Castaneda also was served with a restraining order, keeping her away from appellant.

On September 18, 2013, Castaneda filed for a restraining order against appellant after he called her family and friends and showed up at her house at "weird hours of the night." She kept a copy of the restraining order on the night stand next to her bed. However, the restraining order was never served on appellant.

On September 23, 2013, Castaneda was sleeping with their daughter, N., when she felt some water on her face. When she opened her eyes, appellant was standing next to the bed. Castaneda "freaked out." She testified that appellant did not have keys to her residence, that he was not allowed to live there, and that she did not invite him over.

Appellant told Castaneda to "shut the fuck up, don't scream." He also told her to do whatever he said and threatened to "blow [her] head off." Castaneda retrieved the restraining order from her night stand. She told appellant: "[T]here's a restraining order on you. Why are you here[?]" Appellant responded that he did not care about the restraining order. He told her to "shut up," and said he had a gun. Castaneda believed him.

4

Castaneda picked up her daughter and walked toward her father's room. Appellant followed them, grabbing and pulling on Castaneda's hair. Appellant then stated he was "gonna blow that little bitch's brains out," referring to N. Castaneda managed to reach her father's room and went inside; her father was not there. She tried to close the door, but appellant pushed it open. During the struggle, Castaneda saw a gun in appellant's pocket. She told him, "[S]top, you're scaring the baby." Appellant told N. to "come here," but she refused. He told N. that if she did not come to him, he would hurt her. Appellant then told Castaneda he would ruin her life, which Castaneda understood to mean that appellant would put her in jail and make her lose her nursing license.

Castaneda went to her brother's room with N. The door was locked, and Castaneda tried to pick the lock with her fingernail. When her brother opened the door, appellant ran down the stairs and exited by the front door.

Castaneda then called 911. A recording of the 911 call was played for the jury. During the call, Castaneda told the 911 operator that appellant had broken into her house and threatened to kill her "whole family" if she called the police. She told the operator that appellant was on parole and that she had been trying to serve him with a restraining order. When asked whether she saw a gun, Castaneda stated she did not, but noted that he lied often.

Castaneda was later interviewed by a police officer, and a recording of that interview was played for the jury. Castaneda told the officer that appellant would hang out with gang members. Her statements regarding the instant incident were consistent with her trial testimony, except she did not mention seeing a gun. At trial, she explained that she was scared to mention the gun to the 911 operator or the officer due to appellant's prior threats.

On cross-examination, defense counsel stated: "Now, you've mentioned that Mr. Jimenez is a gang member, right?" Castaneda responded: "Well, when I met him, I didn't -- he was cleaned up. He told me he wasn't involved in anything. He was working." Counsel also asked Castaneda why she told the 911 dispatcher that she was unsure whether appellant was lying when he said he had a gun. Castaneda explained that appellant had twice pulled a gun on her, and she ended up in the hospital after being beaten by appellant. Asked whether she called the police, Castaneda replied, "Yes." Counsel then asked what happened to the case, and Castaneda responded that, "It should be in his record." Counsel inquired about the dates of the incidents, and Castaneda responded that it was in 2005 or 2006. Counsel also asked Castaneda to explain why appellant would say that a restraining order would not stop him. Castaneda explained that appellant had ignored a prior restraining order.

On redirect, the prosecutor used appellant's prior convictions to refresh Castaneda's recollection of the dates appellant physically abused her and violated a restraining order. Castaneda confirmed that appellant was arrested for beating her on March 15, 2005 and June 13, 2006, and that he was arrested for violation of a protective order on March 24, 2009.

N., who was six years old at the time of the incident, testified that she woke up when Castaneda went to the restroom. N. saw appellant "pop[ ] out" and heard him say something to Castaneda. Castaneda came back into the bedroom, and N. heard her say, "[T]here's a restraining order, you can't go near us." Appellant then threw Castaneda's cell phone at her. N. and her mother went to her grandfather's and uncle's rooms. They could not get into the uncle's room because it was locked. N. observed appellant pulling Castaneda's hair, and she heard appellant

6

tell Castaneda that he would "try to get" N. Appellant also said he would "blow our heads off." N. was scared when she saw that appellant had a gun.

The officer who interviewed Castaneda also interviewed N. The recording of the interview was played for the jury. In the interview, N. stated that appellant had broken into the house and told Castaneda that he would kill her (Castaneda). N. said appellant told her he missed her. She did not say that appellant threatened to kill her, or that he had a gun.

Appellant did not testify.

## DISCUSSION

A. *The Trial Court Committed No Reversible Error in Admitting Evidence of Prior Criminal Convictions and Other Character Evidence.*

Appellant contends the trial court abused its discretion in admitting (1) his conviction for making criminal threats against Castaneda on April 16, 2012, (2) other prior uncharged acts, and (3) other character evidence under Evidence Code section 1101. Evidence Code section 1101 provides in relevant part: "(a) Except as provided in this section and in Section[] . . . 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, . . .) other than his or her disposition to commit such an act." Evidence Code section 1109 provides that subject to exceptions not at issue in this case, "in a criminal action in which the defendant is accused of an

7

offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."**3** Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The trial court's rulings under Evidence Code sections 352, 1101, and 1109 are reviewed for abuse of discretion. (See *People v. Foster* (2010) 50 Cal.4th 1301, 1328; *People v. Kipp* (1998) 18 Cal.4th 349, 369.)

Here, over defense counsel's Evidence Code section 352 objection, the trial court ruled that evidence of prior acts of domestic violence and threats was admissible to establish a "foundation" for the "reasonableness of [Castaneda's] fear on the particular date in question." Whether a criminal threat caused a victim to sustain reasonable fear is an element of a section 422 offense. (See *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 [enumerating elements of section 422 offense].) Thus, evidence that appellant had made prior threats or was capable of carrying out his charged threats was admissible, subject to Evidence Code section 352. (See *People v. Malone* (1988) 47 Cal.3d 1, 18 ["to be admissible, evidence of other crimes must be relevant to some material fact in issue, must have a tendency

---

**3** "Domestic violence" is defined as "abuse" committed against "a spouse, former spouse, cohabitant, former cohabitant, or a person with whom the suspect has had a child or is having or has had a dating or engagement relationship." "Abuse" is "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (§ 13700.) Family Code section 6211 extends domestic abuse to include abuse against a child of a party or any "other person related by consanguinity or affinity within the second degree."

to prove that fact, and must not contravene other policies limiting admission, such as Evidence Code section 352"]; *People v. McCray* (1997) 58 Cal.App.4th 159, 172 [evidence of defendant's past domestic abuse victim was admissible under Evidence Code section 1101, as it was relevant to prove defendant's threats reasonably caused victim to fear for her safety]; see also *People v. Chacon* (1968) 69 Cal.2d 765, 777 ["When a prior conviction is an essential element of an offense, it is admitted to prove something other than the defendant's bad character, and is admissible for that purpose"], overruled in part on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390.) Thus, evidence that appellant was a parolee, associated with gang members, always carried guns, ignored valid restraining orders, and had prior convictions for criminal threats and domestic abuse was admissible under Evidence Code section 1101. Moreover, evidence of prior domestic abuse was independently admissible under Evidence Code section 1109. Finally, such evidence was not inadmissible under Evidence Code section 352, as it was probative of the reasonableness of Castaneda's fear, did not necessitate undue consumption of time, and was not unduly prejudicial. (See *People v. McCray*, *supra*, 58 Cal.App.4th at p. 173 ["Given the relevance and probative value of the evidence of past domestic violence, it is clear the court did not abuse its discretion in finding the probative value was not 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice.' (Evid. Code, § 352.)"]; see also *People v. Padilla* (1995) 11 Cal.4th 891, 924 ["although the record must affirmatively show that the trial court weighed prejudice against probative value in admitting evidence of prior bad acts [citations], the trial judge 'need not expressly weigh prejudice against probative

9

value -- or even expressly state that he has done so [citation.].'"], overruled on another point in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)[4]

As to evidence that appellant abused drugs, never paid child support, had stolen Castaneda's credit card and was a possible drug supplier, any error in admitting such evidence was harmless. (See *People v. Malone*, s*upra*, 47 Cal.3d at p. 22 [erroneous admission of other crimes-evidence reviewed under *People v . Watson* (1956) 46 Cal.2d 818 (*Watson*)].) The references were fleeting and the evidence not more prejudicial than other admissible character evidence. More important, as discussed below, Castaneda and N. consistently testified that appellant threatened to kill Castaneda. Thus, it is not reasonably probable that the result would have been more favorable to appellant had this character evidence been excluded.

---

[4] Appellant contends the prior criminal conviction for making criminal threats was not admissible under Evidence Code section 1101 to show a common plan or absence of mistake, as the prior incident was substantially dissimilar from the instant incident. We need not address this contention, as we conclude the evidence was admissible to prove Castaneda's fear was reasonable.

Appellant further contends that the two prior incidents of abuse resulting in Castaneda's hospitalization were inadmissible under Evidence Code section 1109, as those incidents occurred 2005 and 2006, more than seven years before the current incident. Evidence Code section 1109 has a five-year limitations period for "domestic violence" within the meaning of Family Code section 6211, but a 10-year limitations period for "domestic abuse" within the meaning of Penal Code section 13700. As "domestic violence" under Penal Code section 13700 includes abuse of a spouse or former spouse, the prior incidents in 2005 and 2006 fell within the 10-year limitations period in Evidence Code section 1109, and were presumptively admissible.

10

B.     *The Evidence was Sufficient to Sustain Appellant's Conviction for Criminal Threats.*

Appellant contends the evidence was insufficient to support his conviction for making criminal threats against Castaneda.  "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citations.]  Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  [Citation.]  Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]"  (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.)  "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.  [Citation.]"  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"In order to prove a violation of section 422, the prosecution must establish all of the following:  (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that

11

the threat -- which may be 'made verbally, in writing, or by means of an electronic communication device' -- was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo, supra,* 26 Cal.4th at pp. 227-228, quoting § 422.)

Here, Castaneda testified that she was scared because appellant threatened to kill her ("blow your head off"), and N. testified that appellant said he would "blow our heads off." Pointing to inconsistencies between their trial testimony and prior statements, appellant argues that Castaneda's and N.'s testimony was "inherently insubstantial and unreliable." As noted, however, we do not resolve factual conflicts or reweigh evidence. Moreover, the inconsistencies between the trial testimony and prior statements to law enforcement or the 911 operator involved (1) whether Castaneda and N. saw a gun, and (2) whether appellant threatened to kill N. Both Castaneda and N. consistently stated that appellant threatened to kill Castaneda, and the recorded 911 call and the taped police interviews confirmed these accounts. Their testimony was not physically impossible or inherently improbable. Accordingly, substantial evidence supported appellant's conviction.

C.      *Any Error in Failing to Instruct the Jury that Appellant's Out-of-Court Statements Should be Viewed With Caution was Harmless.*

Appellant contends he was denied due process and a fair trial as a result of the trial court's failure to instruct the jury, sua sponte, that his statements that he

would kill Castaneda should be considered with caution. Appellant notes that at the time of his trial, California courts had a sua sponte duty to give such a cautionary instruction. (See, e.g., *People v. McKinnon* (2011) 52 Cal.4th 610, 679 ["It is well established that the trial court must instruct the jury on its own motion that evidence of a defendant's unrecorded, out-of-court oral admissions should be viewed with caution."].) However, in a case decided after appellant's trial, the California Supreme Court held the trial court has no sua sponte duty to give the cautionary instruction "when the statements at issue form the basis of a prosecution for making criminal threats." (*People v. Diaz* (2015) 60 Cal.4th 1176, 1181 (*Diaz*).) In *Diaz,* the Supreme Court noted that "[t]he cautionary instruction is concerned with the reliability and credibility of the witness who testifies about the defendant's statements." (*Id*. at p. 1187.) However, as "courts are now required to instruct the jury, in all criminal cases, concerning the general principles that apply to their consideration of witness testimony" (*Id*. at p. 1190; see also *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883-884), "the cautionary instruction on defendant's statements is no longer so necessary to the jury's understanding of the case as to require the court to give it sua sponte." (See *Diaz*, *supra*, 60 Cal.4th at p. 1191.) Thus, trial courts have no sua sponte duty to give the cautionary instruction. (*Id*. at p. 1190.)

We need not address appellant's contention that *Diaz* should not be applied retroactively, as any instructional error was harmless. (See *Diaz*, *supra*, 60 Cal.4th at p. 1195 [failure to give cautionary instruction reviewed for harmless error under *Watson*].) The jury was instructed on assessing witness credibility and the prosecution's burden of proof beyond a reasonable doubt. "'[W]hen the trial court otherwise has thoroughly instructed the jury on assessing the credibility of witnesses, we have concluded the jury was adequately warned to view their

13

testimony with caution.'" (*Diaz*, *supra*, 60 Cal.4th at p. 1196, quoting *People v. McKinnon*, *supra*, 52 Cal.4th at p. 680.) Moreover, as discussed above, Castaneda and N. consistently and independently stated that appellant threatened to kill Castaneda. Even if viewed with caution, their testimony was compelling. (See *Diaz*, *supra*, 60 Cal.4th at pp. 1195-1196 [error in failing to give cautionary instruction harmless where witnesses' testimony regarding substance and meaning of defendant's threatening statements largely consistent]; *People v. Dickey* (2005) 35 Cal.4th 884, 906 [where there was no conflict in the evidence, "but simply a denial by the defendant that he made the statements attributed to him, we have found failure to give the cautionary instruction harmless"].) Thus, it is not reasonably probable the jury would have reached a result more favorable to appellant had the cautionary instruction been given.

   D.   *The Trial Court did not Abuse its Discretion in Denying Appellant's Romero Motion to Strike Prior "Strikes."*

   Appellant next contends that the court abused its discretion in denying his motion to strike one or both of his prior "strikes." "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, . . . the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such

14

as where the resulting sentence is ""arbitrary, capricious or patently absurd"" under the specific facts of a particular case. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

In denying appellant's *Romero* motion, the trial court stated: "I'm looking at a[n] individual who has prior convictions for the exact same offenses for which he was charged here. The record goes all the way back to 1997 with a two-year state prison tour; another one out of Orange County, inflicting corporal injury on [a] spouse in '06, misdemeanor; miscellaneous other odds and ends; manufacturing and possession of a dangerous weapon in '06; a [Vehicle Code section] 10851 in '09; a burglary in '11; a 422 in '12; a burglary in '13; and this matter in '13. I don't see any improvement. I don't see any likelihood of improvement. *Romero* requires that I make a positive finding this gentleman's outside the spirit of Three Strikes and I certainly cannot do that on the record that I have before me."

On this record, there was no abuse of discretion. The trial court considered the relevant facts and properly exercised its discretion in denying appellant's *Romero* motion.

E. *Appellant was Subject to Only One Five-Year Enhancement Under Section 667.*

Finally, appellant contends that only one five-year enhancement for his two serious felony convictions may be imposed because the underlying charges were not brought and tried separately. The People concede the point. (See *In re Harris* (1989) 49 Cal.3d 131, 135 [under section 667, to impose two five-year enhancements for serious felony convictions, underlying convictions must be brought and tried in separate proceedings].) Accordingly, we will vacate one five-year enhancement and remand for resentencing. (*Id.* at p. 137.)

15

## DISPOSITION

The conviction is affirmed, one of the five-year enhancements under Penal Code section 667, subdivision (a)(1) is vacated, and the matter is remanded for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

                                             MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.

16